UNITED STATES of America, Appellee,

v.

Anthony R. CONTE, Defendant–
Appellant.

No. 645, Docket 96–1344.

United States Court of Appeals,
Second Circuit.

Argued Aug. 26, 1996.

Decided Oct. 21, 1996.

Ruth A. Nordenbrook, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney, Peter A. Norling, Assistant United States Attorney, Brooklyn, NY, on the brief), for Appellee.

Roger J. Bernstein, New York City, for Defendant–Appellant.

Before: MESKILL, KEARSE, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Anthony R. Conte, convicted following his plea of guilty to bank fraud in violation of 18 U.S.C. § 1344 (1994) and sentenced to a term of probation, appeals from a judgment of the United States District Court for the Eastern District of New York, Charles P. Sifton, *Chief Judge,* revoking his probation and sentencing him to a four-month term of imprisonment. The court found that Conte violated the terms of his probation by, *inter alia,* failing to work at a lawful occupation and providing information to his probation officer that was not truthful. On appeal, Conte contends principally that the Sentencing Reform Act of 1984 ("Sentencing Act" or "Act"), 18 U.S.C. § 3551 *et seq.* (1994), does not provide that the reports and responses required of a probationer must be truthful, and hence the court had no statutory authorization to impose a truthfulness requirement or to punish him for providing information that was false. He also argues that there was insufficient evidence to support the findings of probation violations,

that the revocation proceedings violated his Fifth and Sixth Amendment rights, and that the district judge should have recused himself from ruling on the probation violation charges. Finding no merit in any of his contentions, we affirm.

## I. BACKGROUND

Following his plea of guilty and a period of cooperation with the government, Conte was sentenced in May 1995 to, *inter alia,* a three-year term of probation. The judgment of conviction set forth 13 "STANDARD CONDITIONS OF PROBATION" (the "Standard Conditions"), including the following:

(2) The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.

(3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

. . . .

(5) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.

. . . .

(10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

Judgment dated June 2, 1995. In addition, the judgment imposed one special condition: "A special condition of probation is that the defendant spend the first 12 months of the period of probation under house arrest." *Id.*

In October 1995, Conte began serving his one-year term of house arrest and signed a form entitled "Home Confinement Program–Participant Agreement" ("Agreement"). In the Agreement Conte stated, in pertinent part, as follows:

2. I will remain at my approved residence at all times, except for employment and other activities approved in advance by my probation or pretrial services offi-

cer. Regularly occurring activities are provided for in my written weekly schedule which remains in effect until modified by my officer. I must obtain my officer's advance permission for any special activities (such as doctor's appointments) that are not included in my written schedule.

On January 31, 1996, the United States Probation Department ("Department" or "Probation Department") petitioned the district court to find that Conte had violated the above conditions of his probation. The six numbered charges were:

1. Failure to Comply with Special Condition of House Arrest,

2. Failure to Submit Truthful and Complete Wrtten [*sic*] Reports to the Probation Department,

3. Failure to Answer Truthfully All Inquiries by the Probation Officer,

4. Failure to Follow the Instruction of the Probation Officer,

5. Failure to Work Regularly at a Lawful Occupation,

6. Failure to Permit a Probation Officer to Visit Him at His Home.

Conte moved to dismiss the second and third charges on the ground that the Sentencing Act does not require him to give information that is truthful. He also moved to dismiss several charges on the ground, *inter alia*, that they violated his Fifth Amendment privilege against self-incrimination, and he asserted that the allegation that he failed to allow a probation officer into his home on the occasion in question violated his Sixth Amendment right to counsel.

The district court held a hearing at which the government presented evidence from probation officers and from employees of Marcal Paper Mills ("Marcal"), a company with which Conte had claimed to do business. According to Probation Officer David J. Washington, Conte had told the Probation Department that he was the self-employed owner and sole operator of a recycling business known as American Recycling Corporation, and that as part of his operations he daily rented a U–Haul truck to transport recyclable paper materials that he purchased from various apartment complexes in Queens, New York, and resold to Marcal in New Jersey. Washington testified that on a number of occasions, probation officers instructed Conte to submit for their inspection all of the books, records, and receipts pertaining to his business, as well as the licenses he needed in order to operate the business. In response, Conte had submitted only what appeared to be a corporation "kit" and the start of an employment log; he did not produce any other business documents. Two probation officers testified that employees at U–Haul and the apartment complexes from which Conte supposedly collected recyclable materials had no record of him or of American Recycling Corporation. Two employees of Marcal also testified. One stated that he did not recognize Conte; the other stated that although she had seen Conte at the Marcal plant, she did not believe he delivered materials on a daily basis.

Two probation officers testified to Probation Department surveillances of Conte's activities in December 1995 and January 1996, which disclosed numerous failures by Conte to follow preapproved schedules for absences from his home. On one occasion, Conte did not appear at the destinations indicated on his pre-approved itinerary. On another, Conte went to a shopping mall without Department authorization. On several days, Conte returned home between 24 and 46 minutes late; on another, he left home 27 minutes earlier than he was authorized to do. On January 5, 1996, Conte told probation officers he was not going to work; when Washington asked to enter Conte's home, Conte refused him entry. On January 12, 1996, having received permission to go to meet with his attorney, Conte left home but did not show up at the attorney's office; he refused to disclose where he had been.

Conte testified on his own behalf at the hearing. Without denying the allegations against him, he offered explanations for, *inter alia*, one of his late returns home (heavy traffic and a stop at church), his failure to provide the requested business documentation (fear of self-incrimination), and his unauthorized trip to the mall (he wanted to go Christmas shopping and knew "[a]bsolutely" that if he asked the Department for permis-

sion to go, his request would be denied). He stated that he had refused to allow Officer Washington into his home on January 5 because he wanted to consult with his attorney before agreeing to do so and because he was concerned for the well-being of his daughter.

On cross-examination, Conte was asked whether he knew that the recyclable materials he collected from apartment complexes had been meant for curbside recycling by the City of New York; whether he had in fact rented trucks from U–Haul for his business as he indicated on the weekly work schedules he submitted to the Probation Department; and whether he had otherwise followed the work schedules he submitted to the Department for the months of November through January. In response, Conte sought to invoke his Fifth Amendment privilege against self-incrimination. The district court ordered Conte to answer the questions, ruling that he had waived his Fifth Amendment privilege by testifying on direct examination. Conte thereupon testified that he was not aware whether or not the materials he collected were intended for recycling by the City; that he had occasionally rented a truck from a friend, rather than from U–Haul; and that he had followed the work schedules he submitted to the Probation Department for the months in question.

In a decision from the bench on April 26, 1996, the district court rejected all of Conte's constitutional and statutory challenges to the charges and found Conte guilty of violating conditions of his probation. The court noted that the government had the burden of proving the alleged probation violations and that under the law of this Circuit it was sufficient that the violations be established by a preponderance of the evidence; the court noted, however, that even if the standard were that such violations must be established by clear and convincing evidence, that standard was met in the present case "because ... the full panoply of testimony presented, including ... Mr. Conte's own incredible testimony, all persuades me in a very convincing way and quite clearly that he violated the conditions of his probation." (Hearing Transcript, April 26, 1996 ("Tr."), 13–14.) The court found, *inter alia*, that Conte had spent unauthorized

time away from his residence while he was not working; that Conte failed to submit business documentation as instructed by the Probation Department; that his reports to the Department as to his work activities were false; and that his oral responses to probation officers with regard to his work activities were false. The court stated that Conte's contention that there was no requirement that the information he was to give the Probation Department be truthful was "sophistry." The court found that the record easily established that Conte had failed to work regularly at a lawful occupation.

Although in his testimony Conte had proffered explanations for some of his conduct, the court noted that the explanations confirmed, rather than negated, the alleged violations, and that even if credited, the explanations were pertinent only to the question of the appropriate remedy. The court found that Conte's explanations were generally implausible and incredible and indicated that Conte had sought to arrogate to himself control of the administration of his house arrest. Concluding that there was "no hope on this record" that Conte was a good candidate for continued probation (Tr. 21), the court ordered Conte's probation revoked, and it sentenced him to four months' imprisonment.

Judgment was entered accordingly, and this appeal followed.

## II. DISCUSSION

On appeal, Conte contends principally that he was improperly convicted of violating probation conditions because the conditions that his reports and responses to his probation officer be truthful are not authorized by statute. In addition, he argues that the charges that he refused to allow Washington to enter his home on January 5 and refused to disclose where he had been on January 12 violated his Sixth Amendment right to counsel; that the court's order that he answer questions on cross-examination at the revocation hearing violated his Fifth Amendment privilege against self-incrimination; that the evidence was insufficient to support the court's findings that probation conditions were violated; and that the district judge should have recused himself from presiding over the rev-

ocation proceedings. We have considered all of Conte's contentions and find them to be without merit.

## A. *Conte's Challenge to the Requirement that Responses Be Truthful*

█ In allowing a district court to impose a sentence of probation, the Sentencing Act provides, *inter alia,* that, in determining what conditions of probation to impose, the court is required to "consider the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3562(a). Those factors include the nature of the offense, *see id.* § 3553(a)(1); the· need for the sentence imposed to promote respect for the law, *see id.* § 3553(a)(2)(A); and any pertinent policy statement issued by the United States Sentencing Commission ("Sentencing Commission" or "Commission") pursuant to 28 U.S.C. § 994(a)(2) that is in effect on the date the defendant is sentenced, *see* 18 U.S.C. § 3553(a)(5).

The Act itself provides for certain mandatory conditions, none of which is at issue here, *see id.* § 3563(a), and lists certain conditions that are within the court's discretion, *see id.* § 3563(b). Among the discretionary conditions expressly authorized by the Act are the conditions that the probationer "report to a probation officer as directed by the court or the probation officer," *id.* § 3563(b)(16), and that he "answer inquiries by a probation officer," *id.* § 3563(b)(18). In addition, the court is authorized to order that the probationer "satisfy such other conditions as the court may impose." *Id.* § 3563(b)(22).

Within this framework, Conte's contention that there was no authorization for the court to impose probation conditions that his reports and responses be truthful is utterly meritless. First, implicit in the Act's authorization for the court to require that a probationer make reports and answer inquiries is authority to require that those reports and answers be truthful. The implication that information is to be truthful inheres in any requirement that information be given.

Moreover, the implication that truthfulness must be required is supported by several of the § 3553(a) sentencing factors that § 3562(a) requires the court to consider. In the present case, for example, Conte's offense was fraud. Any probation condition that instructed Conte to give information but did not require him to give information that was truthful would hardly give due consideration to the nature of his offense.

Further, irrespective of the nature of the offense, the court must consider the need for the sentence to promote respect for the law. If a court ordered a probationer to provide information and stated that the information given need not be truthful, we would consider that condition to be unauthorized and to promote *dis* respect for the law.

Finally, at the time Conte was sentenced, the Sentencing Commission had promulgated a policy statement that spelled out certain "Recommended Conditions of Probation and Supervised Release," including the following:

> (2) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month,

and

> (3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

Guidelines §§ 5B1.4(a)(2) and (3) (Policy Statement). Thus, except for capitalization and punctuation, the second and third Standard Conditions imposed by the district court on Conte in the June 2, 1995 judgment, *see* Part I above, were identical to conditions recommended in the Sentencing Commission's policy statement, which the Sentencing Act required the court to consider.

In sum, in light of the· Act's authorization for the sentencing court to require a probationer to make reports and answer questions, and its requirement that the court consider the above statutory sentencing factors and the Commission's policy statements, we view the statute as authorizing the condition that the required reports and answers must be truthful.

We also note that even if a requirement of truthfulness in mandated reports and answers were not implicit in the statute, it

would be well within the discretion of the sentencing court to require that such reports and answers be truthful pursuant to its authorization to order that the probationer "satisfy such other conditions as the court may impose," 18 U.S.C. § 3563(b)(22).

■ We reject Conte's contention that the "rule of lenity" requires a different result. The rule of lenity applies only when, *after* consulting "traditional canons of statutory construction," the court is left with a statute that is ambiguous, *see, e.g., United States v. Shabani,* — U.S. —, —, 115 S.Ct. 382, 386, 130 L.Ed.2d 225 (1994) (emphasis in original), and its application is reserved for "situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute," *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (internal quotation marks omitted). There is no ambiguity or reasonable doubt here. The Sentencing Act does not admit of the interpretation that false reports are permitted.

### B. *The Recusal Contention*

■ Conte's contention that the district judge should have recused himself is based on a communication from the Probation Department to Chief Judge Sifton prior to the commencement of the revocation hearing. On the day on which the Department petitioned for revocation of Conte's probation, Officer Washington sent the court a memorandum, with copies to counsel for the government and Conte, stating, *inter alia,* that Conte's attorney had advised the Department that Conte was willing to plead guilty to one charge of violating his probation if, in exchange, the government would stipulate that he spend the remainder of his term of home confinement in a halfway house. According to the memorandum, the Department notified Conte's attorney that it was unwilling to enter into such an agreement and preferred to hold formal violation proceedings. On the basis of this memorandum, Conte moved to disqualify Chief Judge Sifton. We conclude that the motion was properly denied.

■ Events occurring in the course of judicial proceedings generally do not constitute a basis for recusal unless they indicate that the judge has a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994); *see Groden v. Random House, Inc.,* 61 F.3d 1045, 1053 (2d Cir.1995); *In re International Business Machines Corp.,* 45 F.3d 641, 644 (2d Cir.1995). "Since recusal motions are committed to the sound discretion of the district court, ... the issue on appeal is whether the court abused its discretion." *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992).

There has been no showing whatever in the present case that there was any such favoritism or antagonism. In denying Conte's motion, Chief Judge Sifton stated, *inter alia,* that he "ha[d] absolutely no problem assuming that [Conte] is not guilty, unless and until his guilt is proved in this hearing by a preponderance of the evidence." (Tr. 5.) Conte has cast no doubt upon this statement. The denial of his motion was not an abuse of discretion.

### C. *Other Contentions*

Conte's other contentions include his arguments that various charges violated his Sixth Amendment right to counsel, that he should not have been required to answer certain questions on cross-examination at the revocation hearing, and that the evidence was insufficient. These contentions do not warrant extended discussion.

■ Conte's contention that his Fifth and Sixth Amendment rights were violated by the charges that he refused to respond to Probation Department inquiries and refused to allow Officer Washington into his home is misguided. A probationer does not have the right to remain silent or to have an attorney present "when called upon to respond to the supervision efforts of his probation officer." *United States v. Rea,* 678 F.2d 382, 390 (2d Cir.1982); *see generally Minnesota v. Murphy,* 465 U.S. 420, 424 n. 3, 104 S.Ct. 1136, 1140 n. 3, 79 L.Ed.2d 409 (1984) (citing *Rea* ). The duties to report as instructed by a pro-

bation officer and to answer questions posed by a probation officer are obligations integral to probationary status. "While a probationer is not deprived completely of his Fifth Amendment rights and may assert them, he runs the risk that his refusal to answer will lead to a charge of violation of probation." *United States v. Rea,* 678 F.2d at 390.

Conte's contention that compelling him to answer questions on cross-examination during the revocation hearing violated his Fifth Amendment privilege against self-incrimination is doubly flawed. First, a probation revocation proceeding is not itself part of a criminal prosecution, *see, e.g., Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973); *United States v. Brown,* 899 F.2d 189, 193 (2d Cir. 1990), and the district court found that there was no realistic threat to Conte of incrimination with respect to any separate criminal proceeding. Thus, in the revocation hearing, Conte had no privilege against self-incrimination. *See generally Minnesota v. Murphy,* 465 U.S. at 435 n. 7, 104 S.Ct. at 1146 n. 7.

Second, even if Conte had had a privilege against self-incrimination at the revocation hearing, he plainly waived that privilege by testifying in his own defense. The district court properly ruled that since "Conte chose to take the stand and persuade the Court that he was engaged in a legitimate, time consuming, money earning exercise in recycling" (Tr. 13), he was, as is any other witness, open to impeachment on any subject within the scope of his testimony on direct examination, *see, e.g., Brown v. United States,* 356 U.S. 148, 154–55, 78 S.Ct. 622, 626–27, 2 L.Ed.2d 589 (1958); *Bagby v. Kuhlman,* 932 F.2d 131, 135 (2d Cir.), *cert. denied,* 502 U.S. 926, 112 S.Ct. 341, 116 L.Ed.2d 281 (1991). It was well within the discretion of the district court to view the challenged questions as pertinent to the matters on which Conte chose to testify on direct examination.

Finally, given the evidence adduced at the probation revocation hearing, summarized in Part I above, Conte's contention that the evidence was insufficient to support the district court's probation violation findings borders on the frivolous.

## CONCLUSION

We have considered all of Conte's arguments and have found them to be without merit. The judgment revoking probation is affirmed.