**UNITED STATES of America, Appellee,**

**v.**

**Manuel Antonio TORRES–ECHA-VARRIA, a/k/a Manuel Baez, Defendant–Appellant.**

**No. 455, Docket 97–1116.**

United States Court of Appeals, Second Circuit.

Submitted Oct. 14, 1997.

Decided Nov. 3, 1997.

As Amended Nov. 24, 1997.

---

693

Zachary W. Carter, United States Attorney, Eastern District of New York, Susan Corkery, Emily Berger, of Counsel, Brooklyn, NY, for Appellee.

Fern H. Schwaber, Schwaber & Kafer, New York City, for Defendant–Appellant.

Before: JACOBS and LEVAL, Circuit Judges and SIFTON, District Judge.*

\* The Hon. Charles P. Sifton, Chief Judge of the United States District Court for the Eastern Dis- trict of New York, sitting by designation.

JACOBS, Circuit Judge.

Appellant Torres challenges his conviction and sentence for violation of 8 U.S.C. § 1326, which proscribes unlawful re-entry to the United States by an alien who has previously been deported following conviction for an aggravated felony. Torres asserts: (i) that the court exceeded its authority by rejecting a plea agreement between Torres and the Government that would have permitted Torres to plead guilty to a lesser included offense carrying a maximum sentence of 24 months; (ii) that the second plea (which was accepted) lacked an adequate basis because the court did not inquire into Torres' subjective good faith belief in the legality of his actions; and (iii) that the court erroneously "double counted" by considering Torres' prior aggravated felony conviction in calculating both the base offense level and the criminal history category.

## BACKGROUND

On November 29, 1989, Torres, then a permanent resident alien, was convicted in the United States District Court for the Eastern District of New York (Glasser, *J.*) of possession, with intent to distribute, of 1266.8 grams of 86% pure cocaine, in violation of 21 U.S.C. § 841(a)(1). Departing downward for reasons that the present record does not disclose, Judge Glasser sentenced Torres to 18 months of imprisonment. Torres was deported to the Dominican Republic, his country of origin, on July 30, 1993. It was INS policy to advise alien felons that they could not return to the United States without the express consent of the Attorney General and to provide deportees with a form containing that information; but the record is silent as to whether Torres received the form, or was otherwise advised not to come back.

Torres returned to the United States on August 24, 1994. Sixty days later, he was arrested on state charges of criminal possession of a weapon in the second degree and third degree; he pleaded guilty to criminal possession in the fourth degree (a misdemeanor) and was sentenced to 30 days of imprisonment. On May 5, 1995, Torres was again arrested on state charges, this time for criminal sale of a controlled substance in the

third degree and criminal possession of a controlled substance in the third degree. Torres again pleaded guilty to a misdemeanor (criminal possession of a controlled substance in the seventh degree), and was sentenced to 45 days of imprisonment.

While Torres was serving this last sentence, the INS conducted a routine foreign national inmate interview, in the course of which Torres revealed his prior deportation. In due course, Torres was indicted for illegal re-entry by an alien who has previously been convicted of an aggravated felony, and he agreed to plead guilty to the lesser included offense of illegal entry. The statutory maximum term of imprisonment for the lesser included offense is 24 months as compared with the estimated 37 to 46 month Guidelines range for the offense of indictment. In exchange for this benefit, Torres agreed to be deported to save the Government the trouble of instituting deportation proceedings.

At a status conference, Judge Gleeson expressed his inclination to reject the plea agreement, and gave the parties additional time to research his authority and change his mind. Judge Gleeson found it "hard to quarrel" with the Government's policy of offering a plea to a lesser included offense in exchange for the defendant's agreement to be deported. But he noted that his responsibility was to "deal with these cases case by case"; and in Torres' case, Judge Gleeson was of the view that the proposed plea was excessively lenient in light of the many indulgences Torres had received in his prior bargains with the state and federal criminal justice systems:

> There was a great deal of leniency, it seems to me, conferred upon this defendant by Judge Glasser when he was sentenced to 18 months imprisonment, and he comes back into the country and engaged in the most serious sort of criminal conduct, in my judgment, based on what I can tell from the presentence report.

Upon consideration of counsel's written submissions and after extensive oral argument, Judge Gleeson rejected the plea agreement.

Judge Gleeson acknowledged the deference normally accorded an agreement negoti-

ated between competent counsel, the "institutional incentives" that induce a prosecutor to plea bargain, and the observed phenomenon that the plea-bargaining process usually "produce[s] the right result" in terms of the seriousness of the underlying crime, but concluded nevertheless that Torres' case was the unusual one in which the proposed plea agreement does not satisfy the public interest. To guide its discretion, the court consulted the factors outlined in *United States v. Severino*, 800 F.2d 42 (2d Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987), a pre-Guidelines case. Specifically, Judge Gleeson observed that the prosecution was likely to be short, straightforward and successful, so that the risk of an unsuccessful prosecution and the exploitation of scarce prosecutorial resources did not weigh heavily in Torres' case. On the other hand, the judge considered that the cumulative effect of the past and proffered pleas was an excessive leniency that weighed heavily against the agreement's acceptance. Accordingly, the proposed plea agreement was rejected.

Torres and the Government then entered into a new plea agreement. This time, Torres pleaded guilty to the original charge and acknowledged that he faced a maximum sentence of twenty years' imprisonment. The district court accepted this later agreement and conducted a plea allocution. In both the agreement and the allocution, Torres expressly waived his right to appeal in the event the court imposed a sentence not exceeding 46 months, the estimated top end of his Guidelines range, but the Government has not sought to enforce this waiver. The judge did not require Torres to allocute to a willful intent to flout the law, nor did he inquire into Torres' subjective beliefs concerning the legality of his re-entry.

At sentencing on February 11, 1997, Torres challenged his criminal history category of three. He argued that because his base offense already had been increased by 16 levels (pursuant to U.S.S.G. § 2L1.2(b)(2)) to reflect his deportation following conviction of an aggravated felony, that same conviction should not be weighed in fixing his criminal history category. The district court disa-

greed, on the ground that the prior conviction was not "relevant conduct" but rather a status that led to an enhanced sentence. In criminal history category three, Torres' Guidelines range was 41 to 51 months; Judge Gleeson sentenced him to 41 months of imprisonment.

## DISCUSSION

Torres appeals his conviction and sentence on three grounds. We address each argument in turn.

### I. Rejection of the First Proposed Plea Agreement

 The plea bargain is an indispensable tool for the administration of the criminal law. *See* Guidelines Manual, Chapter 1, Part A at 6 (Nov. 1, 1995) (stating that nearly 90% of all federal criminal cases involve guilty pleas). We have consistently endorsed the use of plea agreements as necessary to the operation of the courts within this Circuit. *See, e.g., United States v. Cunavelis*, 969 F.2d 1419 (2d Cir.1992) (binding district court to the terms of a plea agreement it had accepted); *United States v. Pimentel*, 932 F.2d 1029 (2d Cir.1991) (discussing adverse impact on courts which would flow from disincentive to plea bargain). Still, it is appropriate for a judge to scrutinize a deal struck by the prosecutor and defense counsel.

Judge Gleeson looked to the leading case, *United States v. Severino*, 800 F.2d 42, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987), to guide his exercise of discretion in scrutinizing the first proposed plea agreement. *Severino* states that, under Federal Rule of Criminal Procedure 11:

> A trial judge is not required to accept every constitutionally valid [i.e., knowing, voluntary and intelligent] guilty plea merely because a defendant wishes so to plead, and may reject a plea in the exercise of sound judicial discretion.

*Id.* (internal citations and quotation marks omitted) (brackets in original); *see also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (holding that a defendant has no absolute right to

acceptance of his guilty plea); *North Carolina v. Alford,* 400 U.S. 25, 38 n. 11, 91 S.Ct. 160, 168 n. 11, 27 L.Ed.2d 162 (1970) (same); *Lynch v. Overholser,* 369 U.S. 705, 719, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211 (1962) (same); *Siegel v. State of New York,* 691 F.2d 620, 625 n. 4 (2d Cir.1982) (same), *cert. denied,* 459 U.S. 1209, 103 S.Ct. 1201, 75 L.Ed.2d 443 (1983).

■ Federal Rule of Criminal Procedure 11(e)(2) provides that if a plea agreement calls for the Government to move for dismissal of other charges, "the court may accept or reject the agreement." But as the *Severino* court noted, the rule does not furnish criteria for making that decision—a wise omission, because "[s]uch a decision is left to the discretion of the individual trial judge." *Severino,* 800 F.2d at 45 (citation omitted). Among the reasons that may justify the exercise of discretion to reject a plea agreement is a concern that the resulting sentence would be too lenient. *Id.* (citing *United States v. Bean,* 564 F.2d 700, 703–04 (5th Cir.1977)).

*Severino,* which construes Rule 11(e)(2), was decided prior to the advent of the Sentencing Guidelines, but the applicable provision of the Sentencing Guidelines parallels Rule 11:

> In the case of a plea agreement that includes the dismissal of any charges or any agreement not to pursue potential charges [Rule 11(e)(1)(A)], the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.

U.S.S.G. § 6B1.2(a). In the years since the adoption of the Sentencing Guidelines, we have not had occasion to consider the extent of a district judge's discretion under this section to reject a plea agreement.

We begin with the commentary accompanying section 6B1.2(a):

> The court may accept an agreement calling for dismissal of charges or an agreement not to pursue potential charges if the remaining charges reflect the seriousness of the actual offense behavior. This require-

ment does not authorize judges to intrude upon the charging discretion of the prosecutor. If the government's motion to dismiss charges or statement that potential charges will not be pursued is not contingent on the disposition of the remaining charges, the judge should defer to the government's position except under extraordinary circumstances. Rule 48(a), Fed.R.Crim.P. However, when the dismissal of charges or agreement not to pursue potential charges is conditioned on acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated, and the court is to determine whether or not dismissal of charges will undermine the sentencing guidelines.

U.S.S.G. § 6B1.2 cmt.

This commentary, read together with the text of section 6B1.2, confirms that Judge Gleeson acted well within the bounds of his discretion. First, the text of section 6B1.2 requires a district judge, before accepting a proposed plea agreement that includes the dismissal of other charges, to determine on the record that (1) the remaining charges reflect the seriousness of the underlying offense and (2) the agreement will not undermine the statutory purposes of sentencing or the Guidelines. Section 3553 requires the sentencing court to impose a sentence sufficient, but not greater than necessary:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

18 U.S.C. § 3553(a)(2). The findings in the record bear directly on subsections (A), (B) and (C), and properly disregard (in this case) subsection (D). Judge Gleeson found that the lesser included offense of illegal re-entry inadequately reflected the seriousness of Torres' conduct in returning promptly after

his deportation in order to add to his string of offenses, and that leniency in earlier cases had merely encouraged Torres to further disregard American law. It was no abuse of discretion for Judge Gleeson to decide that allowing Torres to plead to an offense carrying a statutorily-prescribed maximum sentence of twenty-four months, when the Guidelines applicable to the offense of indictment called for a much higher sentence, would disserve the purposes of the Guidelines.

■ Because Torres was proposing to plead to a lesser offense than the one for which he was indicted, the district court possessed broad latitude to evaluate the proposed plea. The final sentence in the commentary to U.S.S.G. § 6B1.2 reflects that the review of a prosecutor's proposal to dismiss a claim (here, the re-entry by an aggravated felon that was the sole count of the indictment against Torres), in consideration of a plea of guilty to some other offense (here, simple re-entry), implicates core judicial functions. In such a case, the court's adjudicatory and sentencing responsibilities justify active scrutiny of the plea agreement; the type of individualized analysis outlined in *Severino* remains appropriate.

This view is reinforced by the Commission's disavowal of any intention to "make major changes in plea agreement practices." *United States v. Stanley*, 928 F.2d 575, 582 (2d Cir.1991) (quoting U.S.S.G., Ch.1, Part A, Introduction (Nov. 1990)); *United States v. Aguilar*, 884 F.Supp. 88, 90 (E.D.N.Y.1995) (same); *see also* Stephen G. Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.Rev. 1, 31 (1988) (noting that the Guidelines reflect the Commission's intention to leave the state of plea bargaining "where it found it").

## II. Torres' Subjective Beliefs Concerning the Legality of his Re-entry

■ Torres complains that during his allocution the district court failed to inquire into his subjective belief regarding the legality of his re-entry, and argues that the basis of his plea therefore is faulty. The district judge was under no obligation to undertake such an inquiry, however, because "a good faith or mistake defense does not exist under Section 1326." *United States v. Champegnie*, 925 F.2d 54, 55 (2d Cir.1991); *see also United States v. Newton*, 677 F.2d 16, 17 (2d Cir.) (per curiam) (holding that the Government need not show that a defendant specifically intended to disobey the law in order to prove a violation of section 1326), *cert. denied*, 459 U.S. 850, 103 S.Ct. 111, 74 L.Ed.2d 98 (1982). Torres' reliance on three Supreme Court cases that imported scienter requirements into other criminal statutes is misplaced. *See Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (possession of a machinegun); *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (knowing transportation of a visual depiction of a minor engaging in sexually explicit conduct); *Ratzlaf v. United States*, 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (structuring financial transactions to avoid currency reporting requirements). Section 1326 does not implicate the concerns that led the Court to engraft a scienter requirement onto other, unrelated statutes.

As we noted in *Champegnie*, section 1326 "contains no language requiring proof of a particular mental state. It simply states that a previously deported alien may not reenter the United States without the express consent, obtained in advance, of the Attorney General." *Champegnie*, 925 F.2d at 55. We agree with Judge Posner: "[t]o be justified in rewriting the statute so that the words 'unless ... the Attorney General has expressly consented' become 'unless ... the alien reasonably believes that the Attorney General has expressly consented' requires more than a general distaste for strict liability criminal statutes." *United States v. Anton*, 683 F.2d 1011, 1019 (7th Cir.1982) (Posner, J., dissenting). The two most common objections to strict liability criminal statutes lose force when applied to section 1326. The first is that "the moral authority of the criminal law is undermined when criminal punishment is visited upon an act committed with an innocent intent." *Id.* Section 1326 applies only to previously deported aliens. The practice of the INS is to advise them that they face criminal liability for an unlawful

return. Moreover, deportation itself is sufficient to impress upon the mind of the deportee that return is forbidden. No one in that position could innocently assume that the INS is a travel agency. The statute simply, and logically, makes the presumption of unlawful intent conclusive.

The second concern often cited in objection to strict criminal liability is that "fear of being punished for inadvertently straying across the line separating the lawful from the unlawful will cause people to steer too far clear of the forbidden zone—will deter socially desirable behavior along with the undesirable behavior that the statute was intended to deter." *Id.* We do not believe that the statute's plain meaning risks excessive deterrence of lawful entry by previously deported aliens. *Id.*

In sum, we see no reason for departing from the plain language of the statute or from our previous clear holding that good faith mistake is no defense to a charge of violation of section 1326. The district court was therefore under no obligation to inquire into Torres' subjective beliefs regarding the legality of his re-entry. Accordingly, we affirm the conviction.

### III. The Sentence

■ Torres argues that, in calculating his criminal history category, the district court erred by considering the aggravated felony conviction that also contributed to the 16–point enhancement of his base offense level. Thus, he asserts that his prior aggravated felony conviction was "double counted."

Torres relies on Section 4A1.2(a)(1), which specifies the prior sentences that go into the calculation of a defendant's criminal history category: "[A]ny sentence previously imposed... for conduct *not* part of the instant offense." U.S.S.G. § 4A1.2(a)(1) (emphasis added). The commentary to this section further elaborates: "Conduct that is part of the relevant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3." U.S.S.G. § 4A1.2(a)(1), Appl. Note 1. Section 1B1.3, in turn, defines relevant conduct by reference to "the applicable guideline" for the substantive offense. U.S.S.G. § 1B1.3(a)(4). Torres contends that his prior aggravated felony conviction should not count towards his criminal history because it formed a part of the instant offense, as defined by section 2L1.2. *See id.*

The Sentencing Commission has issued guidance to a sentencing judge faced with a defendant in Torres' position. That guidance is sufficiently clear and specific that no ambiguity can be said to arise.

The commentary to section 2L1.2, which prescribes the sentence applicable to Torres' specific offense, expressly provides that "[a]n adjustment under subsection ... b(2) for a prior felony conviction applies *in addition to* any criminal history points added for such conviction in Chapter Four, Part A (Criminal History)."[1] U.S.S.G. § 2L1.2, Appl. Note 5 (emphasis added);[2] *see Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) ("[C]ommentary in

---

1. Under the Guidelines that took effect on November 1, 1997, the section previously numbered 2L1.2(b)(2) is now 2L1.2(b)(1)(A) and Application Note 5 is now Application Note 4. The analysis in this opinion is equally applicable to the renumbered section and application note, which are otherwise unchanged.

2. The fact that Application Note 5 refers to *"any* criminal history points added" for the prior felony should not be read to mean that *no* criminal points may normally be added (which is what Torres' reading of section 4A1.2(a)(1) would compel). Such an interpretation would make Application Note 5 virtually superfluous. To be sure, Torres' reading would not render Note 5 a dead letter. One could still argue that illegal re-entry could entail criminal history points if it constituted a parole violation, *see* U.S.S.G.

§ 4A1.1(d), but that points may not be accrued solely for the prior felony (which is, under his interpretation, "part of the instant offense"). We do not believe, however, that the text is sufficiently pliable to sustain these distinctions. The plain language of the note suggests that such double counting is permissible. And the slight difference in wording between Application Note 5 and other sections that mandate double counting does not change our opinion. *Compare* Application Note 5 ("An adjustment under subsection ... (b)(2) for a prior felony conviction applies *in addition to any* criminal history points added for such conviction in Chapter Four, Part A (Criminal History).") *with* U.S.S.G. § 2K2.1, Application Note 15 ("Prior felony convictions resulting in an increased base offense ... *are also counted* for purposes of determining criminal history points pursuant to Chapter Four

the Guidelines manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of that guideline."); *United States v. Jackson*, 60 F.3d 128, 131 (2d Cir.) (holding that commentary to the Guidelines is binding authority), *cert. denied,* —— U.S. ——, ——, ——, 116 S.Ct. 487, 116 S.Ct. 951, 116 S.Ct. 1057, 133 L.Ed.2d 414, 875, 134 L.Ed.2d 201 (1995) (multiple defendants' petitions for certiorari). This explicit mandate defeats any argument that the district judge engaged in impermissible double counting. *See also United States v. Crawford*, 18 F.3d 1173, 1179 (4th Cir.) (holding, in a case that preceded the amendment to the commentary under section 4A1.2, that it is not impermissible "double counting" (i) to treat a prior felony as a specific offense characteristic under section 2L1.2(b) and (ii) to count it in calculating criminal history under section 4A1.1), *cert. denied,* 513 U.S. 860, 115 S.Ct. 171, 130 L.Ed.2d 107 (1994); *United States v. Zapata*, 1 F.3d 46, 49–50 (1st Cir.1993) (same).

 Impermissible "double counting" is the *judicial* augmentation of a defendant's sentence in contravention of the applicable statute or Sentencing Guideline. *See, e.g., United States v. Hernandez*, 85 F.3d 1023, 1032 (2d Cir.1996) (noting that statutory limitations on double-counting prevented court

from enhancing defendants' narcotics-related sentences for the possession of firearms while simultaneously imposing consecutive sentences for same offense, but remanding for resentencing where consecutive sentences were vacated so that statutory proscription against double-counting no longer applied). With very few limitations, Congress is free to prescribe any sentence that in its view reflects the seriousness of the underlying offense and the characteristics of the offender. In section 2L1.2, the Sentencing Commission, acting on authority granted by Congress, has indicated in commentary that for defendants in Torres' position, the appropriate sentence will be calculated at the intersection of (i) an offense level that includes the 16–point enhancement for his prior aggravated felony conviction and (ii) the criminal history category that includes the points attributable to that conviction.

Judges Leval and Sifton would end the analysis at this point, content to rely on this panel's unanimous view that the text of Application Note 5 is unambiguous and dispositive. In the view of the author, however, more can be said, and should be said, to reinforce this conclusion, as set forth in the margin.[3] Judges Leval and Sifton express no opinion as to footnote 3.

Because the Sentencing Commission's directive in section 2L1.2 (and Application Note 5 thereto) is unambiguous, the district

....""). Although the Guidelines' wording is somewhat inconsistent, we think that it reflects at most a minor, technical oversight rather that an intentional articulation of substantively different policies. And we certainly would not say that it creates a level of ambiguity that would require us to turn to canons of statutory construction, such as, for example the rule of lenity. *See United States v. Wells*, —— U.S. ——, ——, 117 S.Ct. 921, 931, 137 L.Ed.2d 107 (1997). We have no doubt that the Commission intended Application Note 5 to indicate that prior convictions are to be reflected as prescribed in both the computation of the offense level and the criminal history category.

3. The tension that Torres identifies between section 4A1.2 and section 2L1.2 arises only if his prior conviction constitutes "conduct" within the meaning of section 4A1.2; Torres' argument thus confuses the concepts of status and conduct. Torres' prior conviction is not offense conduct that is to be excluded in calculating his criminal history category but is instead a prerequisite status determining the availability of additional

penalties. We have recognized that distinction in the context of the statute under which Torres was charged and sentenced. We emphasized in *United States v. Cole*, 32 F.3d 16, 18 (2d Cir. 1994), that section 1326(a) proscribes the offense of re-entry and that section 1326(b) merely provides for increased punishment by virtue of the offender's status as an illegal alien previously convicted of an aggravated felony rather than creating a separate criminal offense. The Supreme Court has observed the same distinction in ruling that the Ex Post Facto Clause is not violated by a career criminal statute (which provided greater punishment if a defendant was previously convicted of a crime). *See Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 1259, 92 L.Ed. 1683 (1948). The Court concluded that the enhanced punishment is predicated on the commission of the subsequent offense; without visiting additional punishment on account of the earlier offense, it merely adds to the available penalties by reason of the defendant's status. Therefore, in the author's view, section 4A1.2 and section 2L1.2 are in fact harmonious.

court committed no error in following it by considering Torres' previous felony conviction both in the calculation of his base offense and in the calculation of his criminal history category. *See* U.S.S.G. § 1B1.7 (failure to follow commentary that interprets or explains application of a guideline "could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal"). The 41–month sentence imposed by the district court falls within the resulting range.

## CONCLUSION

We affirm Torres' conviction and sentence.

Further, to the extent that any conflict remains between the two sections, which the author doubts, a well-established canon of statutory construction resolves the question in favor of the sentence imposed by the district court. The commentary to section 4A1.2, which is general in scope, does not control or confuse the specific direction contained in section 2L1.2. The operative principle of statutory construction is that a specific provision takes precedence over a more general provision. *See United States v. Moran,* 236 F.2d 361, 363 (2d Cir.1956) (holding that where a general and a specific statute prohibit the same conduct, the specific statute controls); *Poole v. Kelly,* 954 F.2d 760, 763 (D.C.Cir.1992) (per curiam) (holding that Good Time Credit Act, a general statute, did not take precedence over the specific twenty-year minimum sentence imposed on persons convicted of first-degree murder under the D.C.Code); *see also American Land Title Ass'n v. Clarke,* 968 F.2d 150, 157 (2d Cir. 1992) ("We are guided by the principle that where two statutes conflict, the statute that addresses the matter under consideration in specific terms controls over one that does so in a general manner, unless of course Congress has manifested a clear intent to the contrary."), *cert. denied,* 508 U.S. 971, 113 S.Ct. 2959, 125 L.Ed.2d 660 (1993); *Bolar v. Frank,* 938 F.2d 377, 378 (2d Cir.1991) (per curiam) ("[W]ell settled principles of statutory construction dictate that the later, specific venue provision ... applies rather than the earlier, general venue provision.") Moreover, the rule of lenity (which may or may not apply to the Sentencing Guidelines) would not dictate a contrary conclusion, because that rule applies only when traditional precepts of statutory construction have failed to resolve an ambiguity. *See United States v. Conte,* 99 F.3d 60, 65 (2d Cir.1996).