**UNITED STATES of America, Appellee,**

**v.**

**Istvan MARTUS, aka Jozsef Sztojka, Defendant–Appellant.**

**No. 863, Docket 97–1320.**

United States Court of Appeals, Second Circuit.

Submitted Jan. 5, 1998.

Decided March 9, 1998.

Patrick J. Brown, Buffalo, NY, for Defendant–Appellant.

Patrick H. NeMoyer, United States Attorney, Buffalo, NY (Joel Louis Violanti, Assistant United States Attorney, counsel), for Appellee.

Before: KEARSE and JACOBS, Circuit Judges, and ARTERTON, District Judge.*

PER CURIAM:

Istvan Martus appeals from a conviction by jury for violating 8 U.S.C. § 1326, which makes it a felony for an alien who has been previously arrested and deported to reenter the United States without the express consent of the Attorney General to reapply for admission. The appellant contends that the evidence that he lacked the permission of the Attorney General to reapply for admission to the United States is insufficient to sustain the government's burden of proof of his guilt. We disagree and affirm the judgment of conviction.

In December of 1994, Martus entered the United States in Buffalo, New York by crossing the "Peace Bridge," which connects Buffalo and Fort Erie, Ontario, Canada. As he walked past the U.S. Customs Office, the appellant indicated his presence by gesturing through the glass. Because the glass was tinted, Mr. Martus could not see how many officials were inside or what they were doing. No one stopped Mr. Martus, or requested identification or any other information from him as he crossed the border. Mr. Martus now asserts that failure of any official to stop or question his use of this recognized border crossing constituted tacit or implied permission to reenter the United States.

### Discussion

We must determine whether, viewed in the light most favorable to the government, there is substantial evidence to support the guilty verdict. *See Glasser v. United*

---

* Honorable Janet Bond Arterton, District Judge, United States District Court for the District of Connecticut, sitting by designation.

*States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469–70, 86 L.Ed. 680 (1942).

 At the time of Martus's arrest, title 8, Section 1326 of the United States Code provided that:

(a) Subject to subsection (b) of this section, any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) *prior to* his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the *Attorney General has expressly consented to such alien's reapplying for admission;* ...shall be fined under Title 18, or imprisoned ..., or both.

8 U.S.C. § 1326 (as in effect in 1994, amended in 1996) (emphasis added). In *U.S. v. Newton,* 677 F.2d 16 (2d Cir.1982) (per curiam), *cert. denied,* 459 U.S. 850, 103 S.Ct. 111, 74 L.Ed.2d 98 (1982), we found "nothing in the language or legislative history of section 1326 to support the proposition that the government must prove specific intent." *Id.* at 17. Accordingly, the government need only prove a voluntary act of reentry or attempted reentry by the defendant that is not expressly sanctioned by the Attorney General. *See U.S. v. Espinoza–Leon,* 873 F.2d 743, 746 (4th Cir.), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).

 The Attorney General's express permission to reapply for readmission to the United States can be obtained through the process described in 8 C.F.R. § 212.2. The government introduced into evidence a Certificate of Nonexistence of Record signed by the Acting Chief of Records Operations for the Immigration and Naturalization Service, establishing that Mr. Martus had not yet filed an application for permission to reapply for admission to the United States after deportation pursuant to the procedure outlined in 8 C.F.R. § 212.2, nor had such permission been granted to him. Moreover, Defendant's trial testimony acknowledged that he had received no such permission. Permission to reapply for admission must be expressly given, 8 U.S.C. § 1326 (Attorney General must have "expressly consented to such alien's reapplying for admission"), and the Code of Federal Regulations clearly provides for how this express permission may be obtained. There is no statute or regulation that expressly authorizes a border guard to grant the required express consent of the Attorney General, *cf.* 8 C.F.R. § 103.1 (Delegations of Authority), and even if there was an implicit or constructive delegation of such authority, no express consent to reapplication for admission could be found where a deported alien reenters without informing the INS officials of his prior deportations. *See, e.g., United States v. Mancebo–Santiago,* 875 F.Supp. 1030, 1035 (S.D.N.Y.1995).

 Even if appellant's argument is framed as a defense that he believed in good faith he had received the consent of the Attorney General to reenter the country, we have expressly rejected such a defense in *United States v. Champegnie,* 925 F.2d 54 (2d Cir.1991): "a good faith or mistake defense does not exist under Section 1326." *Id.* at 55.

In *Newton* ... we held that [the government] need prove only that the previously deported alien intended to reenter the United States. It is a short and logical step from that holding to the conclusion that good faith or mistaken belief on such an alien's part that he or she could reenter lawfully is not a defense.... We read the statute to mean what it says: A previously deported alien who reenters the United States does so at his or her peril, and any subjective belief as to the legality of that act is irrelevant.

*Id.* at 55–56 (citations omitted).

Inasmuch as the government's undisputed evidence demonstrated that the defendant did not seek nor receive permission from the Attorney General to reapply for admission, and there is no good faith belief defense under § 1326 in this circuit, defendant's claim of "implied consent" is unavailing, and accordingly the judgment of conviction is affirmed.