The UNITED STATES of America, Appellee,

v.

Daniel RODRIGUEZ, Defendant–Appellant.

No. 04–4157–CR.

United States Court of Appeals, Second Circuit.

Argued: March 15, 2005.

Decided: July 20, 2005.

**124**

Lawrence Mark Stern, New York, NY, for Defendant–Appellant.

Thomas Fallati, Assistant United States Attorney (Susan Corkery, Assistant United States Attorney, of counsel; Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief), Brooklyn, NY, for Appellee.

Before: STRAUB and WESLEY, Circuit Judges, SESSIONS, Chief Judge.*

STRAUB, Circuit Judge.

This appeal asks us to decide whether attempted reentry in violation of 8 U.S.C. § 1326(a) is a specific intent crime, requiring that the government allege and prove that a previously deported alien intended to enter the United States without the expressed permission of the United States Attorney General. We hold that it is not. Consistent with our opinion in *United States v. Martus*, 138 F.3d 95 (2d Cir.1998)

*(per curiam)*, we hold that to sustain a conviction for attempted illegal reentry the government need only allege and prove a voluntary attempt to reenter the United States in the absence of the expressed permission of the Attorney General.

## BACKGROUND

Rodriguez was deported from the United States in February 2000. On June 7, 2002, he arrived at John F. Kennedy International Airport in Queens, New York, aboard a flight from the Dominican Republic. After disembarking, Rodriguez approached an Immigration and Naturalization Service ("INS") checkpoint, presented an altered passport in the name of "Miguel Harris," and attempted to pass. The agents did not allow Rodriguez to enter the United States; but, instead, detained him on suspicion of attempted illegal entry. After some investigation the agents discovered that "Miguel Harris" was actually Rodriguez, whereupon Rodriguez was arrested.

The government subsequently obtained an indictment against Rodriguez for violation of 8 U.S.C. § 1326(a). That indictment alleged that Rodriguez "attempted to enter the United States, without the Attorney General of the United States having expressly consented to such alien's reapplying for admission." Upon a motion brought by Rodriguez, the District Court (Allyne R. Ross, *Judge*), issued an oral order on September 10, 2003, dismissing the indictment for failing to allege that Rodriguez specifically intended to reenter the United States.

Based on the District Court's decision, the government obtained a second indictment against Rodriguez. That indictment

* The Hon. William K. Sessions, III, Chief Judge, United States District Court for the District of Vermont, sitting by designation.

alleged that Rodriguez "knowingly and intentionally attempted to enter the United States without the Attorney General of the United States having expressly consented to such alien's reapplying for admission." Rodriguez again moved to dismiss the indictment for facial inadequacy, arguing that the indictment failed to allege that Rodriguez demonstrated specific intent to violate 8 U.S.C. § 1326(a). In an unpublished opinion dated December 18, 2003, the District Court denied that motion.

On February 12, 2004, Rodriguez entered a conditional plea of guilty, preserving his right to appeal the District Court's denial of his second motion to dismiss the indictment. On July 28, 2004, the District Court entered judgment on the plea, convicting Rodriguez of attempted reentry in violation of 8 U.S.C. § 1326(a). Rodriguez now appeals, claiming that the indictment upon which judgment was entered was insufficient as a matter of law. In addition, he has requested remand in consideration of resentencing pursuant to the Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and our decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005). We assert jurisdiction under 28 U.S.C. § 1291, affirm, dismiss, in part, and deny the request for remand.

## DISCUSSION

This appeal asks us to decide whether the offense of attempted reentry in violation of 8 U.S.C. § 1326(a) requires that the government allege and prove a level of mental culpability above that which it is required prove for the completed offense of reentry in violation of 8 U.S.C. § 1326(a). While this is nominally an issue of first impression in our Circuit, we find that our decision in *United States v. Martus*, 138 F.3d 95 (2d Cir.1998) (*per curiam*), applies, and extend the rule announced there to cover cases involving attempted reentry in violation of 8 U.S.C. § 1326(a).

The defendant in *Martus* claimed that, under 8 U.S.C. § 1326(a), for a completed act of reentry the government must prove specific intent to reenter the United States without the expressed permission of the Attorney General. 138 F.3d at 96. The defendant in *Martus* argued that the government had failed to do so in his case because he had the implied permission of border guards and Customs agents who had not stopped his progress as he passed, conspicuously, across the United States' border with Canada. *Id.* We rejected that argument. Relying on our decision in *United States v. Newton*, 677 F.2d 16 (2d Cir.1982), we held that "the government need only prove a voluntary act of reentry *or attempted reentry* by the defendant that is not expressly sanctioned by the Attorney General." 138 F.3d at 97 (emphasis added).

■ While the reference to attempted reentry is dicta in *Martus*, we see no reason to withdraw from that conclusion here, and now hold that the offense of attempted illegal reentry under § 1326(a) does not require the government to allege or prove that a defendant had the specific intent to reenter the United States without the expressed permission of the Attorney General. We find that nothing about the nature of the offense as an "attempt" crime, rather than a completed crime, requires proof of specific intent. In so holding, we join several of our sister circuits, *see, e.g., United States v. Morales–Palacios*, 369 F.3d 442, 446–48 (5th Cir.2004); *United States v. Peralt–Reyes*, 131 F.3d 956 (11th Cir.1997) (*per curiam*); *United States v. Reyes–Medina*, 53 F.3d 327 (1st Cir.1995) (*per curiam*), and depart from one, *see United States v. Gracidas–Ulibarry*, 231 F.3d 1188 (9th Cir.2000).

In support of his argument on appeal, Rodriguez relies heavily on the Ninth Circuit's opinion in *Gracidas–Ulibarry*. Defendant in that case, on the morning after he was deported from the United States, was found in the back seat of a car being driven through a checkpoint on the border between Mexico and California. He was subsequently charged with attempted illegal reentry. At the end of trial Gracidas–Ulibarry requested that the jury be charged that it must find that he " 'intended to reenter the United States without the consent of the Immigration and Naturalization Service.' " 231 F.3d at 1191. That request was denied and, instead, the jury was asked to determine whether Gracidas–Ulibarry " 'attempted to reenter the United States on or about December 5, 1997,' and did not have the requisite permission of the Attorney General." *Id.* Gracidas–Ulibarry appealed; and the Ninth Circuit, sitting *en banc*, reversed, holding that "the attempt prong of § 1326 incorporates the well-established common law meaning of 'attempt' and requires proof of a specific intent to enter illegally." *Id.* at 1191–92.

In support of this holding, the Ninth Circuit relied on the common law's requirement of specific intent for attempt crimes, which, the court found, is designed "to resolve the uncertainty whether the defendant's purpose was indeed to engage in criminal, rather than innocent, conduct." *Id.* at 1193. Noting prior Ninth Circuit support for the proposition that when legislatures use "attempt" in a statute, they intend to incorporate the common law requirement of specific intent, and finding that "[n]either the text of § 1326 nor its legislative history gives any indication that Congress intended not to incorporate the common law meaning of the term 'attempts' into the crime of attempted illegal reentry," the court concluded that "Congress intended an attempted reentry under § 1326 to be a crime of specific in-

tent." *Id.* More concretely, the Court held that, to be found guilty of attempted illegal reentry, a defendant must have "the purpose, i.e. conscious desire, to reenter the United States without the express consent of the Attorney General." *Id.* at 1196.

We agree with the Ninth Circuit insofar as the common law generally imposes a heightened *mens rea* requirement for attempt crimes. We also appreciate the important role that this general rule plays in cases where conduct is ambiguous. We disagree, however, with the Ninth Circuit's statutory interpretation in this case, particularly in light of the rather unique circumstances of § 1326 defendants, which obviate the normative concerns that inform the Ninth Circuit's statutory interpretation.

To start, we note that § 1326 defines a statutory offense rather than enshrining in statute a common law offense; therefore, the words in the statute are liberated from their common law meanings. *See Morales–Palacios*, 369 F.3d at 447; *Newton*, 677 F.2d at 17 (pointing out that the decision not to impose a specific intent requirement in § 1326 is within Congress's "broad discretion in defining offenses in the area of immigration"); *see also U.S. v. Balint*, 258 U.S. 250, 251–252, 42 S.Ct. 301, 66 L.Ed. 604 (1922) ("While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it, there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court.") (citation omitted). 8 U.S.C. § 1326(a) provides that

any alien who-

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior Act, shall be fined under Title 18, [United States Code,] or imprisoned not more than 2 years, or both.

In *United States v. Newton* we held that there is "nothing in the language or legislative history of section 1326 to support the proposition that the government must prove specific intent." 677 F.2d 16, 17 (2d Cir.1982). We relied upon that holding in *Martus* to conclude that to sustain a guilty verdict "the government need only prove a voluntary act of reentry or attempted reentry by the defendant that is not expressly sanctioned by the Attorney General." 138 F.3d at 97. While the facts in neither of those cases involved attempted reentry, we see nothing in the plain language of the statute or in its legislative history to persuade us that Congress intended to impose a heightened *mens rea* requirement in cases of attempted reentry.

In further support of our interpretation of the statute we find that the legislative purpose served by § 1326 would be obstructed by the imposition of a heightened *mens rea* standard in attempt prosecutions. *See Balint*, 258 U.S. at 251–252, 42 S.Ct. 301. In *United States v. Champegnie*, we held that § 1326 evinces a legislative purpose to attach significant risk to reentry after deportation. 925 F.2d 54, 55 (2d Cir.1991) ("We read [§ 1326] to mean what it says: A previously deported alien who reenters the United States does so at his or her peril, and any subjective belief as to the legality of that act is irrelevant."). This increased danger of conviction imposes added deterrent force, encouraging deported aliens to take additional care should they seek to reenter by limiting the universe of defenses that might be advanced by those who do not meet the requirements for legal reentry. *See U.S. v. Torres–Echavarria*, 129 F.3d 692, 698 (2d Cir. 1997) (holding that the heightened level of deterrence imposed on previously deported aliens by a plain reading of § 1326 was not "excessive" in light of the circumstances addressed by the statute); *Champegnie*, 925 F.2d at 55 (rejecting as contrary to the language and legislative purpose of § 1326 the defense of "good faith or mistaken belief on [a previously deported] alien's part that he or she could reenter lawfully"). This enhancement of risk is well within the "broad discretion" of Congress to "defin[e] offenses in the area of immigration." *Newton*, 677 F.2d at 17. More importantly, the purposes of the enhancement, to achieve added deterrence and to heighten duties of care, would be eroded significantly if we were to read § 1326 as making attempted reentry a specific intent crime because the increased peril would attach only on successful reentry, imposing only remote force at the moment of decision.

The Ninth Circuit's decision in *Gracidas–Ulibarry* was also motivated, in part, by the need to distinguish innocent from guilty action. 231 F.3d at 1193. Addressing a parallel concern, we pointed out in *Torres–Echavarria* that § 1326 "applies only to previously deported aliens." 129 F.3d at 697. There, as here, that fact is significant because

The practice of the INS is to advise [deported aliens] that they face criminal liability for an unlawful return. Moreover, deportation itself is sufficient to impress upon the mind of the deportee that return is forbidden. No one in that position could innocently assume that the INS is a travel agency. [§ 1326] simply, and logically, makes the presumption of unlawful intent conclusive.

*Id.* at 697–98. The Fifth Circuit in *Morales–Palacios* made the same point, holding that

under section 1326 a specific intent requirement is unnecessary, because the regulatory nature of the statute makes the presumption of unlawful intent conclusive. A previously deported alien has a unique set of knowledge that might not otherwise exist for defendants in traditional common law crimes; upon being deported, an alien has been given both oral and written notice that he or she cannot reenter without the express permission of the Attorney General. The act of attempting to reenter therefore speaks for itself.

369 F.3d at 448.

By virtue of their prior deportation, those subject to § 1326 already have knowledge of the specific legal duties imposed by the statute. There is, therefore, no need, in order to protect truly innocent behavior—including good faith attempts to seek permission to reenter—to require proof of knowledge of the need for permission from the Attorney General or knowledge that no such permission had been granted. For this reason, in light of the clarity of the statutory language, and to preserve the purposes that the statute is meant to achieve, we hold that there is no specific intent requirement for attempted reentry after deportation.

■ The indictment on which judgment was entered in the instant case alleges that Rodriguez "knowingly and intentionally at-tempted to enter the United States." That is sufficient to meet the general intent requirement of § 1326(a). *See Champegnie*, 925 F.2d at 55 ("[T]o prove a violation of Section 1326 . . . [the government] need prove only that the previously deported alien intended to reenter the United States."). As noted, the statute does not require the government to allege or prove either that Rodriguez knew that he needed the permission of the Attorney General to reenter or that he knew that he did not have that permission when he intentionally attempted to reenter the United States. *Cf. Martus*, 138 F.3d at 97; *Champegnie*, 925 F.2d at 55 (holding that "good faith or mistaken belief on such an alien's part that he or she could reenter lawfully is not a defense [under 8 U.S.C. § 1326]"). Accordingly, we affirm the District Court's holding that the indictment here sufficiently alleged the crime of attempted illegal reentry.

■ As to his sentence, Rodriguez, for the first time on appeal, claims that the District Court erred by sentencing him according to the United States Sentencing Guidelines as if those Guidelines were mandatory rather than advisory. *See United States v. Booker*, — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Rodriguez does not seek to withdraw his plea in light of this error but, rather, seeks remand to the District Court for consideration of resentencing pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). As part of his plea, Rodriguez waived his right to appeal any sentence requiring him to serve fifty-seven or fewer months in prison. The District Court sentenced Rodriguez to a term of forty-six months' imprisonment. In this circumstance we enforce the waiver of right to appeal. *United States v. Morgan*, 406 F.3d 135 (2d Cir.2005) ("*Morgan II*"). The enforced waiver operates as a bar on

our authority to review the merits of Rodriguez's appeal of his sentence and, therefore, that portion of his appeal must be, and is, dismissed. *See United States v. Morgan*, 386 F.3d 376, 383 (2d Cir.2004) (dismissing appeal of sentence for alleged violations of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), based on enforceable waiver). Given the role of *Crosby* remands in evaluating the merits of an unpreserved *Booker* error, and consistent with the practice established in *Morgan II*, we deny Rodriguez's request for remand. *Compare United States v. Fuller*, 332 F.3d 60, 64–66 (2d. Cir.2003) (pointing out that, when denied jurisdiction to review the merits of an appeal, we are not limited to dismissal but may, if appropriate, craft a remand to accommodate the circumstances), *vacated on other grounds,* — U.S. ——, 125 S.Ct. 1055, 160 L.Ed.2d 999 (2005).

## CONCLUSION

We have considered Rodriguez's remaining arguments and find that each of them is without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED, the appeal is DISMISSED, in part, and the request for remand is DENIED.