United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 97-1094

United States of America,      *
                               *
            Appellee,          *
                               *    Appeal from the United States
      v.                       *    District Court for the Southern
                               *    District of Iowa.
Ramon Gonzalez-Chavez,         *
                               *
            Appellant.         *

_____

Submitted:  May 20, 1997
    Filed:  July 28, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN and MORRIS SHEPPARD
      ARNOLD, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Ramon Gonzalez-Chavez was convicted, following a jury trial, of being found in the United States without lawful permission after having been previously arrested and deported, a violation of 8 U.S.C. § 1326(a) (1994). On appeal, Gonzalez-Chavez argues that the District Court[1] erred by prohibiting him from presenting evidence of his good faith belief that he could lawfully reenter the United States after his deportation.

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

He also argues that the District Court's exclusion of this evidence amounted to a denial of his constitutional right to testify on his behalf. We affirm.

We review a district court's decision to exclude evidence for abuse of discretion. See United States v. Blumeyer, 114 F.3d 758, 770 (8th Cir. 1997). Gonzalez-Chavez challenges the District Court's grant of the government's motion in limine to exclude any testimony or other evidence concerning Gonzalez-Chavez's belief that he could lawfully reenter the United States after his deportation. The District Court determined that Gonzalez-Chavez's belief was irrelevant under § 1326(a), which provides that "any alien who . . . has been arrested and deported . . . and thereafter . . . enters, attempts to enter, or is at any time found in, the United States" is subject to fine, imprisonment, or both, unless "prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission." The statute on its face does not speak to the issue of criminal intent, and the court declined to read a specific intent element into the statute. Accordingly, the court did not allow Gonzalez-Chavez to present evidence of his alleged good faith, albeit mistaken, belief as to the lawfulness of his return to the United States. Gonzalez-Chavez contends that a specific intent element does exist under § 1326(a); therefore, he argues, evidence of his belief as to whether he had the Attorney General's express permission to reenter the United States is relevant, and its exclusion constituted an abuse of the District Court's discretion.

In support of this contention, Gonzalez-Chavez relies on United States v. Anton, 683 F.2d 1011 (7th Cir. 1982) (2-1 decision) (Posner, J., dissenting). In Anton, the court held that specific intent (i.e., whether a defendant had the intent to reenter the United States unlawfully) is an element under § 1326. See id. at 1017. Thus, evidence concerning Anton's belief that he had obtained the necessary permission to reenter the United States was relevant. The court then allowed Anton to defend against the charge that he violated §1326 by proving an objectively reasonable mistake concerning the existence of express permission from the Attorney General.

Gonzalez-Chavez's reliance on Anton, however, is misplaced. First of all, unlike Anton, Gonzalez-Chavez cannot establish an objectively reasonable mistake or a good faith belief as to the existence of the Attorney General's express permission to reenter the United States. Anton presented evidence to support his belief that he had the express consent of the Attorney General--namely, testimony that since his deportation he had numerous dealings with officials in the American Consulate, the local Immigration and Naturalization Service (INS) office, and the Attorney General's office, and that as a result of those dealings he had acquired a new visa and gained readmission to the United States through an ordinary INS checkpoint. See id. at 1013. The evidence that Gonzalez-Chavez marshals to support his belief that he had the express consent of the Attorney General falls far short in comparison. Gonzalez-Chavez bases his alleged good faith belief on his possession of a green card issued prior to his deportation and on the existence of several documents obtained since his return to the United States, including an employment application, an Iowa nondriver identification card, a marriage certificate, and an identification card issued by his employer. While a green card allows an alien to live and work in the United States, Gonzalez-Chavez's green card became void at the time of his deportation, and although the green card and each of the aforementioned documents correctly states Gonzalez-Chavez's name, social security number, date of birth, and other requested information, none of the items addresses the issue of the Attorney General's necessary express consent. Gonzalez-Chavez has alleged no post-deportation contact, much less discussions, with anyone in the Attorney General's office, with any other governmental official, or with any attorney regarding the necessary permission to return to the United States. Because Gonzalez-Chavez has not pointed to any evidence in the record that in fact supports an objectively reasonable belief on his part that he had the express consent of the Attorney General to return to the United States, he cannot successfully claim that under the Anton rationale the exclusion of his evidence amounted to prejudicial error. See United States v. Espinoza-Leon, 873 F.2d 743, 746 n.2 (4th Cir.) (remarking that defendant's erroneous legal conclusion concerning his lawful presence in the United States could not form the basis of an objectively reasonable belief where,

inter alia, the "defendant had no contact with the Justice Department or with an attorney" prior to his return), cert. denied, 492 U.S. 924 (1989).

Moreover, Anton's holding that a specific intent element exists under § 1326 has not been well-accepted by the courts. Not only was Anton decided by a divided panel over a dissent by Judge Posner, but each of the eight other circuit courts of appeals that have considered whether the government must prove that a defendant had the specific intent to reenter the United States unlawfully have squarely rejected the proposition. See United States v. Henry, 111 F.3d 111, 114 (11th Cir. 1997); United States v. Soto, 106 F.3d 1040, 1041 (1st Cir. 1997), petition for cert. filed, No. 96-9030 (U.S. May 13, 1997); United States v. Trevino-Martinez, 86 F.3d 65, 69 (5th Cir. 1996), cert. denied, 117 S. Ct. 1109 (1997); United States v. Ayala, 35 F.3d 423, 426 (9th Cir. 1994), cert. denied, 514 U.S. 1019 (1995); Espinoza-Leon, 873 F.2d at 745; United States v. Hernandez, 693 F.2d 996, 1000 (10th Cir. 1982), cert. denied, 459 U.S. 1222 (1983); United States v. Newton, 677 F.2d 16, 17 (2d Cir.) (per curiam), cert. denied, 459 U.S. 850 (1982); United States v. Hussein, 675 F.2d 114, 116 (6th Cir.) (per curiam), cert. denied, 459 U.S. 869 (1982). In fact, a number of these courts have specifically rejected a defense involving a good faith belief or reasonable mistake as to the existence of the Attorney General's permission. See Henry, 111 F.3d at 114 (determining that defendant's "alleged good faith belief that he had the Attorney General's express permission to reenter the United States is irrelevant"); Soto, 106 F.3d at 1041 (holding that good faith belief that visa constituted the required permission of Attorney General is not a defense to prosecution under § 1326); Trevino-Martinez, 86 F.3d at 69 (concluding "that § 1326 does not require the government to prove specific intent nor does it provide an alien who reenters this country illegally with a defense of reasonable mistake"); United States v. Champegnie, 925 F.2d 54, 55 (2d Cir. 1991) (holding "that a good faith or mistake defense does not exist under Section 1326").

We agree with those courts that have held that specific intent is not an element of the offense in § 1326 prosecutions. Section 1326 is silent on the issue of criminal

intent, and while statutory silence alone does not necessarily dictate that intent is not an element of the stated crime, see Morissette v. United States, 342 U.S. 246, 262 (1952), nothing in the legislative history of § 1326 supports inferring an element of specific intent, see Pena-Cabanillas v. United States, 394 F.2d 785, 790 (9th Cir. 1968) (analyzing the legislative history and concluding that "[i]t would be absurd . . . to think that Congress inadvertently left 'intent' out of Section 1326"). To the contrary, the use of express language concerning specific intent in other provisions of the Immigration and Nationality Act, 8 U.S.C. § 1101-1524 (1994 & Supp. I 1995), suggests that Congress intended to establish a mala prohibita offense "to assist in the control of unlawful immigration by aliens." Pena-Cabanillas, 394 F.2d at 788; see also id. at 789 & n.4 (referring to 8 U.S.C. §§ 1287, 1306, 1324, 1325, 1327, and 1328). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)) (alteration in Russello). Because the statute "denounces the doing of an act as criminal, if a defendant voluntarily does the forbidden act [(reenters the United States without express permission from the Attorney General)], the law implies the intent." Pena-Cabanillas, 394 F.2d at 788-89.

Accordingly, evidence of specific intent is irrelevant to an action under § 1326, and the District Court did not abuse its discretion by so finding and by prohibiting Gonzalez-Chavez from presenting evidence of his alleged good faith belief that he could lawfully reenter the United States.[2] See United States v. Leon-Leon, 35 F.3d 1428, 1433 (9th Cir. 1994) (holding that district court did not abuse its discretion by denying admission of evidence concerning defendant's reasonable belief that he had

---

[2]While a good faith belief or reasonable mistake defense is unavailable under § 1326, we note that a defendant may argue that he, in fact, had the express permission of the Attorney General to be present in the United States. Gonzalez-Chavez, however, does not advance, nor does the evidence support, such an argument here.

permission to reenter the United States based on possession of a green card); <u>United States v. Ramos-Quirarte</u>, 935 F.2d 162, 163 (9th Cir. 1991) (per curiam) (holding that defendant's procurement of special agricultural worker status subsequent to "his return to the United States is in no way a defense to the charge that his return itself was illegal").

Gonzalez-Chavez next argues that because the District Court prevented him from testifying on the issue of his good faith or reasonable belief as to the lawfulness of his return to the United States, the court erroneously denied him the right to testify on his own behalf. We reject this argument. While a defendant has "the right to take the witness stand and to testify in his . . . own defense," <u>Rock v. Arkansas</u>, 483 U.S. 44, 49 (1987), this right is not unlimited, <u>see</u> <u>id.</u> at 55. "[T]hat the proffered testimony should have relevance to something the jury must decide is clearly an appropriate restriction." <u>United States v. Gleason</u>, 980 F.2d 1183, 1185-86 (8th Cir. 1992). Because we have determined that evidence of Gonzalez-Chavez's good faith belief is irrelevant to his § 1326 prosection, his argument must fail. Gonzalez-Chavez was free to testify about matters relevant to the proceedings, but he chose not to avail himself of the opportunity. <u>See</u> <u>id.</u> at 1186 (holding that court's decision only excluded testimony concerning outrageous government conduct and that it was defendant's decision not to testify about other matters).

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-