UNITED STATES of America

v.

Samuel Dozie NWENE, Defendant.

Criminal No. 97–640.

United States District Court,
D. New Jersey.

Aug. 26, 1998.

Louise T. Lester, AUSA Office of United States Attorney, Camden, NJ, for U.S.

Lori M. Koch, AFPD Office of Federal Public Defender Camden, NJ, for Defendant.

## OPINION

SIMANDLE, District Judge.

Presently before the court in this criminal case are numerous pre-trial motions by the defendant, in connection with defending upon a charge that he attempted to re-enter the United States after having been deported, subsequent to a conviction, for the commission of an "aggravated felony," in violation of 8 U.S.C. §§ 1326(a) & 1326(b)(2). Defendant seeks an order (1) permitting evidence of his good faith belief that he was eligible for asylum and lacked the specific intent to violate the statute barring reentry; (2) permitting evidence in support of a "justification" or "necessity" defense; (3) redacting from the indictment certain surplusage; (4) precluding the application of the enhanced sentencing provision under § 1326(b)(2) as inapplicable to redefining prior crimes for which an alien was convicted prior to the statute's effective date; and (5) precluding exposure to a sentence, in the event of conviction, of more than two years. Several of these issues require the court to examine the nature of the criminal intent, if any, that must be shown to prove the offense of unlawful reentry, and whether defendant's evidence of an alleged good faith belief in the propriety of the reentry to obtain asylum, or to demonstrate an alleged necessity to reenter to seek asylum, should be permitted at trial.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Indictment

On November 6, 1997, defendant Samuel Dozie Nwene was indicted for knowingly and wilfully attempting to enter and entering the United States in violation of 8 U.S.C. § 1326(a) and 1326(b)(2).[1] (Indictment ¶ 4.) Specifically, the indictment charges that Nwene had previously been deported from the United States subsequent to a conviction for the commission of a crime that is now classified as an "aggravated felony". (Id. ¶¶ 1–2.) The indictment charges that when defendant attempted to reenter the United States on July 14, 1997, he acted in violation of 8 U.S.C. § 1326(a), because the Attorney General had not expressly consented to Nwene reapplying for admission to the United States. (Id. ¶ 3.)

### B. Factual Background

Defendant Samuel Nwene, a Nigerian national, was convicted of bank larceny and conspiracy to commit bank larceny and was sentenced in the United States District Court for the Northern District of New York on June 19, 1987, at which time he was sentenced to serve concurrent sentences of five years on each count. After release from imprisonment, he allegedly voluntarily left the United States and returned to Nigeria.

Defendant reentered the United States again in 1992, but was immediately deported. Defendant was apparently warned at that time that returning to the United States within five years of deportation without permission is a felony, punishable by imprison-

1. This statute provides in relevant part that:
   (a) Subject to subsection (b) of this section, any alien who
   (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter,
   (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his embarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission;

   or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
   shall be fined under Title 18, imprisoned not more than 2 years, or both.
   (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection— ... (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both ...
   as amended Sept. 30, 1996, Pub.L. 104–208.

ment of "not more than two years and/or a fine of not more that $1,000.00."

Defendant most recently entered the United States on July 14, 1997 at Newark International Airport, on Northwest Airlines from Amsterdam, the Netherlands. (Def.'s Br. at 2.) According to defendant's proffer, he arrived at the airport, was questioned by officers of the Immigration and Naturalization Service ("INS"), and he admitted that he was actually carrying a passport that belonged to a relative, and explained that he had left Nigeria because he feared for his life. (Id. and Ex. A thereto.) At an INS interview on July 22, 1997, the INS officer concluded that Nwene had established that he had a credible fear of persecution in his home country, and that there was therefore a significant possibility that he could establish eligibility for asylum. (Id. and Ex. B thereto, at ¶¶ 1.20, 8.01, 8.16.) This conclusion was reached after defendant described to the INS officer the story of his previous imprisonment and torture in Nigeria. (Id. and Ex. C thereto.) According to defendant, he was persecuted because of his involvement in the Campaign for Democracy and because of his father's role as an organizer in a labor union that had been banned by the government. (Ex. C to Def.'s Br. at p. 3.) Defendant described in detail the physical torture he claimed to have undergone, and stated that among other injuries sustained, he had been hospitalized for six months with a broken neck because he had fallen while being hung by the waist and whipped. (Id.) He asserted that there was an arrest warrant outstanding against him in Nigeria. (Id. at 4.) The interviewing INS Officer found defendant's testimony to be credible, and found that "[t]here is a signifi-

cant possibility that he will be harmed if he returns to Nigeria." (Id. at 6.)

Defendant filed an application for asylum with the United States Department of Justice, Immigration Court in Newark. (Def.'s Br. at 4.) He remained in detention throughout. (Id.) Subsequent to filing his application for asylum, on November 6, 1997, an indictment was filed, charging defendant with illegal entry into the United States following deportation and removal, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). (Id. at 4–5.) On November 21, 1997, Immigration Judge Henry Dogin dismissed Nwene's asylum petition because Nwene was detained and unable to appear at the proceedings.

## C. Procedural Background

Following his indictment on November 6, 1997, defendant was arraigned on November 10, 1997 and was ordered detained. The matter was assigned to this court, and defendant then brought the instant pretrial motions. A hearing on the motions was held on May 8, 1998. The court reserved decision on several of the motions, and required supplemental briefing thereon.[2] The court now addresses the remainder of defendant's motions, on which we had reserved decision.

## II. DISCUSSION

### A. Motion to Permit Evidence of Defendant's Reasonable Belief that he was Eligible for Asylum and that he Therefore Lacked the Requisite Intent to Violate the Statute

Defendant argues that although silent on the issue of intent, 8 U.S.C. § 1326 should be interpreted to require a specific intent,[3]

---

2. The court also ruled upon several of defendant's motions at that time. Specifically, (a) the court dismissed as moot defendant's motion for disclosure of *Brady* material; (b) the court dismissed as moot defendant's motion for summaries of the United States' expert testimony but preserved the United States' right to call on an expert in the event defendant's proposed expert is allowed to testify; (c) the court dismissed without prejudice defendant's motion to dismiss the indictment on the ground that he did not attempt to effect an "entry", this being an issue of fact for trial; (d) the court granted defendant's motion to compel the United States to furnish discovery material regarding defendant's 1990

deportation hearing; and (e) the court granted defendant's motion for the disclosure of all "other crimes or bad acts" evidence which the government seeks to admit under Rule 404(b) of the Federal Rules of Evidence. In addition, the court granted the United States' motion for reciprocal discovery.

3. *See* Black's Law Dictionary 1399 (6th ed.1990) (defining "specific intent" as designating "a special mental element which is required above and beyond any mental state requirement with respect to the *actus reus* of the crime" and defining a "Specific Intent Crime" as a "crime in which

and that he should be permitted to raise the defense that he lacked the requisite intent. Although the briefing regarding intent has been less than crystal clear,[4] it appears both parties agree that at the very least, Section 1326 is a general intent statute. That is, the parties agree that the United States must prove that the defendant's act of entering or attempting to enter the United States was a voluntary act. This interpretation is well supported by the caselaw. *See e.g., United States v. Gonzalez–Chavez*, 122 F.3d 15, 17–18 (8th Cir.1997); *United States v. Henry*, 111 F.3d 111, 114 (11th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 237, 139 L.Ed.2d 167 (1997); *United States v. Ortiz–Villegas*, 49 F.3d 1435, 1437 (9th Cir.), *cert. denied*, 516 U.S. 845, 116 S.Ct. 134, 133 L.Ed.2d 82 (1995); *United States v.. Espinoza–Leon*, 873 F.2d 743, 746 (4th Cir.), *cert. denied*, 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).[5] These cases establish that regardless of whether a court labels Section 1326 a "strict liability" statute or a "general intent" statute, in order to obtain a conviction under 8 U.S.C. § 1326, the government must prove, *inter alia*, that the defendant entered the United States voluntarily. Thus, for example, if a previously deported or excluded alien were kidnaped and carried into this country unknowingly or unwillingly, that person would not be liable under Section 1326, as the physical act of entering would not have been voluntary.

■ Defendant asserts, however, that the statute requires not only a voluntary act of reentry or attempted reentry, but also a specific intent to knowingly reenter illegally—that is, an intent to reenter while knowing that the alien is not allowed to reenter the United States. Contrary to defendant's position, the great majority of circuits have held that the government need not prove that the defendant knew it was illegal for him to enter the United States. *See, e.g., United States v. Torres–Echavarria*, 129 F.3d 692, 697 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1177, 140 L.Ed.2d 185 (1998); *Gonzalez–Chavez*, 122 F.3d at 16–17 (8th Cir. 1997); *United States v. Martinez–Morel*, 118 F.3d 710, 717 (10th Cir.1997); *Henry*, 111 F.3d at 113–14 (11th Cir.1997); *United States v. Asibor*, 109 F.3d 1023, 1035–36 (5th Cir.) *cert. denied*, —— U.S. ——, 118 S.Ct. 254, 139 L.Ed.2d 182 (1997); *United States v. Soto*, 106 F.3d 1040, 1041 (1st Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 94, 139 L.Ed.2d 50 (1997); *Ortiz–Villegas*, 49 F.3d at. 1437 (9th Cir.), *cert. denied*, 516 U.S. 845, 116 S.Ct. 134, 133 L.Ed.2d 82 (1995); *Espinoza–Leon*, 873 F.2d at 746 (4th Cir.), *cert. denied*, 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989); *United States v. Hussein*, 675 F.2d 114, 116 (6th Cir.), *cert. denied*, 459 U.S. 869, 103 S.Ct. 154, 74 L.Ed.2d 129 (1982). One result of this holding is that there is no good faith defense available for a defendant who wishes to assert that he believed it was legal for him to reenter the United States. *See e.g., Gonzalez–Chavez*, 122 F.3d 15, 18 (8th Cir.1997); *Henry* 111 F.3d at 114; *United*

---

defendant must not only intend the act charged, but also intend to violate the law").

4. In fairness to the parties, it should be noted that the terms "strict liability," "general intent," and "specific intent" have been used with a profound lack of precision by the courts, and clear definitions are hard to come by in the caselaw.

5. There is some language in the cases describing Section 1326 as a regulatory strict liability statute containing no mental element. *See, e.g., United States v. Torres–Echavarria*, 129 F.3d 692, 697 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1177, 140 L.Ed.2d 185 (1998); *United States v. Martinez–Morel*, 118 F.3d 710, 716 (10th Cir.1997). The statute is, however, better viewed as a general intent statute since, under the sentencing enhancement provisions of Section 1326(b)(2), defendants may be subject to sen-

tences of up to twenty years. *See* L. Sand, et al., Modern Federal Jury Instructions, at 33A–40 (Bender, 1998). *See also* W. LaFave & A. Scott, Substantive Criminal Law, § 3.8 (West 1986) (stating that the severity of the punishment is an important factor in determining the intent requirement of a statutory crime; "the greater the possible punishment, the more likely some fault is required"). The court finds that Section 1326 is indeed a general intent statute, and that the government must prove, *inter alia*, that the defendant's acts were knowing and voluntary. Accordingly, we need not address defendant's argument, made in supplemental briefing, that it is impermissible to dispense altogether with a *mens rea* requirement. (Defendant's Supplemental Letter Brief dated June 3, 1998 citing *United States v. X–Citement Video*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)).

*States v. Trevino–Martinez*, 86 F.3d 65, 69 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1109, 137 L.Ed.2d 310 (1997); *United States v. Champegnie,* 925 F.2d 54, 55 (2d Cir.1991).

In support of his argument that Section 1326 is a specific intent statute, defendant cites to *United States v. Anton,* 683 F.2d 1011, 1017 (7th Cir.1982). In that case, the Seventh Circuit read into Section 1326 a specific intent requirement, and reversed and remanded for a new trial to allow the defendant to present his defense that he reasonably believed he had the consent of the Attorney General to reenter the United States.[6] *Id.* at 1018. Defendant asserts that the issue of the requisite intent under Section 1326 has yet to be decided in the Third Circuit,[7] and that this court should adopt the reasoning of *Anton* to find that a defendant's mistaken belief that he is eligible to enter the United States negatives the intent requirement under Section 1326. Defendant further argues that this court should permit him to present evidence that he believed that he was eligible for political asylum in the United States, and that due to this eligibility it was not illegal for him to come to the United States.[8]

We decline defendant's invitation to adopt the reasoning of *Anton. Anton* was itself decided over a divided panel in which Judge Posner's dissent argues persuasively that the majority's decision was contrary to congressional intent. *Id.* at 1019–1022. The *Anton*

court's reasoning is, furthermore, difficult to follow, as the court focused upon the reasons why Section 1326 is not a strict liability statute, while giving no treatment of the distinction between the remaining options of general versus specific intent. Indeed the *Anton* court's reasons for finding that the statute is not a strict liability statute are entirely sound. The court noted that the statute did not have the "nature and quality" of a "regulatory" statute, as it is a felony, with a potentially severe punishment. *Id.* at 1015–17. This reasoning does not on its own suffice, however, to explain why the statute should be interpreted to create a specific intent crime as opposed to a general intent crime. Under these circumstances, we predict that were the Third Circuit to address this question, it would—like nine of the ten other circuits that have addressed the issue—reject *Anton,* and would find that Section 1326 does not require the prosecution to prove that the defendant intended to violate the law. Accordingly, defendant's motion to permit evidence of his good faith belief that he could legally enter the country to seek asylum shall be denied.

### B. *Motion to Permit Defendant to Raise a Justification Defense and to Offer Expert Testimony in Support Thereof*

Defendant argues that he should be permitted, at trial, to raise the defense of justification,[9] and to present evidence that he had

---

**6.** The court in *Anton* did not actually specify that it found Section 1326 to contain a requirement of *specific* intent; rather, it merely stated that "we hold that there is some mental state requirement." *Id.* at 1017. Indeed, the *Anton* court spoke less in terms of general versus specific intent, instead referring to the more recent terminology of "purpose, knowledge, recklessness, negligence." *Id.* at 1016. That court was, furthermore, somewhat imprecise in its use of terminology regarding the various mental state requirements. *See e.g., id.* at 1014 and n. 3 (distinguishing "voluntariness" from "general intent"). By holding in *Anton* that a defendant's mistaken belief that he was legally permitted to enter the country negatives the intent requirement of Section 1326 (*id.* at 1017), *Anton* can only be interpreted to be reading into Section 1326 a specific intent requirement—that is, a requirement that the defendant intended to do the act while knowing that his act is unlawful.

**7.** *See United States v. DiSantillo,* 615 F.2d 128, 132 n. 6 (3d Cir.1980) (declining to decide whether wilfulness is required under Section 1326).

**8.** We note that upon his arrival in the United States, defendant attempted to enter the country under the assumed name of his brother (whose passport he was carrying), rather than presenting himself to the immigration authorities in order to immediately apply for political asylum. This conduct calls into question defendant's assertion that he believed he was eligible for asylum in the United States. This question is of no moment, however, as we find *infra* that there is no specific intent requirement in Section 1326, and there therefore is no good faith defense available to defendant.

**9.** In his motion brief and supplemental briefs, defendant refers variously to the defense of ne-

no legal alternative to violating the law by returning to the United States. Specifically, defendant asserts that he was subjected to political persecution in Nigeria, and that in the year preceding his departure from Nigeria he was in hiding in order to evade arrest because he reasonably feared that arrest would result in renewed torture and/or death. Defendant further argues that he was unable to apply for asylum in the United States or any other country prior to his departure, because the risk of coming out of hiding in order to obtain and process the necessary papers would be too great. For these reasons, according to defendant, he took his brother's passport and flew to the United States, by way of the Netherlands, under his brother's name in order to avoid arrest, torture, and perhaps death.

▮ The defense of justification may excuse an unlawful act if the defendant proves that (1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct causal relationship is reasonably anticipated to exist between defendant's action and the avoidance of harm.[10] *See United States v. Meraz–Valeta*, 26 F.3d 992, 995 (10th Cir.1994) (citing *United States v. Seward*, 687 F.2d 1270, 1276 (10th Cir.1982)) (*en banc* ), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 789, 74 L.Ed.2d 995 (1983). Neither party has cited any case in which a court considered the availability of this defense to a prosecution under Section 1326, and our research has failed to reveal any such case. In an analogous case, however, where the defendant was prosecuted under a criminal statute that had no specific-intent requirement, the Third Circuit recognized the availability of the justification de-

fense. *See United States v. Paolello*, 951 F.2d 537, 541 (3d Cir.1991) (finding the justification defense available where defendant was charged with possession of a firearm under 18 U.S.C. § 922).[11] The court reasoned, however, that where a statute is written in "absolute terms, leaving little room for any defense based on lack of intent," the justification defense must be applied in a restrictive manner. *Id.* at 541. Methods noted by the court for restricting the defense include requiring the defendant to prove that the prohibited conduct took place for "no longer than absolutely necessary" to avoid the anticipated harm, and requiring the defendant to put forth evidence on all elements of the justification defense in order for the defendant to be permitted to mount the defense. *Id.* at 541–42 (citing *United States v. Singleton*, 902 F.2d 471, 472–73 (6th Cir.)), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990); *United States v. Bifield*, 702 F.2d 342, 345–46 (1982), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983). Accordingly, we hold that in the instant case, defendant shall be permitted to offer a justification defense, provided he is able, at a pretrial evidentiary hearing, to establish that he has evidence which, if believed by the fact finder, would prove each element of the defense, including the requirement that he not have continued the illegal conduct for longer than necessary to avoid the anticipated harm.

The United States argues that defendant should not be permitted to raise this defense in the instant case because defendant had other legal alternatives to unlawfully reentering the United States. Specifically, the United States asserts that defendant could have

---

cessity and the defense of duress. In the Third Circuit, these two defenses have been subsumed under the single heading of "justification". *See United States v. Paolello*, 951 F.2d 537, 540 (3d Cir.1991) (noting that the historical distinction between the duress defense (excusing criminal actions performed under an unlawful threat of serious bodily injury caused by human forces) and the necessity defense (excusing criminal conduct in response to a threat of serious bodily injury caused by natural forces) have become blurred).

**10.** This affirmative defense of justification should not be confused with the argument that defen-

dant was under duress such that he lacked the specific intent to commit the crime. As held *supra*, there is no specific intent requirement under 8 U.S.C. § 1326. Rather, the justification defense is in this case an affirmative defense, raised as a means to excuse the defendant's admittedly unlawful conduct. As such, the defendant would bear the full burden of proving this defense.

**11.** Title 18 U.S.C. § 922(g)(1) provides in relevant part that "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by one year; to ... possess in or affecting commerce, any firearm".

sought asylum in a number of other countries apart from the United States, such as the Netherlands. (Defendant's flight to the United States came via the Netherlands, and the United States therefore asserts that defendant could have remained there and applied for asylum rather than continuing on to the United States.) Alternatively, the United States asserts that defendant could have chosen the legal alternative of applying for asylum prior to his arrival in the United States. The United States is correct that a justification defense must fail "if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm.'" *Paolello*, 951 F.2d at 540 (quoting *United States v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)). However, the question whether the defendant can prove that he had no legal alternative is a question which cannot be answered until the defendant has had an opportunity to proffer his proofs, which he has not yet done. In defendant's supplemental briefs, counsel for defendant states that, contrary to the United States' assertions, Nigerians are not permitted to seek asylum in the Netherlands, and that defendant, while he was in hiding, did not have access to the papers required to apply for asylum. Without hearing defendant's evidence on these points, it is not possible to find, as requested by the United States, that defendant's justification defense fails as a matter of law.

Accordingly, a pretrial evidentiary hearing shall be held, in which the defendant shall be permitted to present all his evidence regarding the justification defense. Defendant has sought a pretrial ruling on the admissibility of evidence relating to his "justification" defense. Preliminary questions regarding admissibility of evidence may be decided at a pretrial hearing under Rule 104(a) of the Federal Rules of Evidence. Such a hearing is consistent with Rule 104(b) where the relevancy of evidence of justification is conditioned upon a fact or set of facts, namely, a

sufficient body of evidence from which a reasonable jury could find in defendant's favor upon the affirmative defense of justification; otherwise, as the United States has argued, such evidence would be insufficient as a matter of law and therefore irrelevant (barred by Rules 401 and 402 because it does not go to a fact of consequence in the case). The vehicle of a Rule 104 hearing is especially appropriate where "an accused is a witness and so requests," under Rule 104(c), Federal Rules of Evidence. Presumably, Nwene's testimony is anticipated since many of the circumstances of his "necessity" for reentry are within his unique personal knowledge. The court shall at that time determine whether, under Federal Rule of Evidence 104(a), defendant has offered evidence sufficient to establish each element of a restricted justification defense, including the requirement that he not have continued the illegal conduct for longer than necessary to avoid the anticipated harm.

In addition, if, as suggested by defendant's motion papers, defendant wishes to include among this evidence testimony by a witness who is an expert in the political climate in Nigeria at the time of defendant's departure, defendant may proffer this expert testimony at the pretrial evidentiary hearing. The court will at that time determine whether the proffered expert testimony meets the requirements of Rules 702 (qualification of expert) and Rule 104(a) (relevancy of evidence) of the Federal Rules of Evidence.

### C. *Motion to Redact the Indictment*

Defendant moves to redact various elements of the indictment, pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure.[12] First, defendant requests the deletion of references in the indictment to the alias "Brian Weston," on the ground that the alias is irrelevant to the instant crime, and that its inclusion is potentially prejudicial. The name Brian Weston is apparently the name used by defendant in the commission of the bank larceny crime in 1986, and neither

---

12. Defendant had also moved, at the hearing on May 8, to strike as surplusage the allegation in the indictment that defendant's conduct was "knowing and wilful". That motion was subsequently withdrawn by letter to the court dated June 3, 1998. Indeed the court agrees that this language belongs in the indictment, as it speaks to the general intent requirement of Section 1326—that is, the requirement that the defendant's acts be voluntary.

party has as yet suggested any reason why the name might be relevant to the instant crime. The United States does not oppose defendant's motion to remove the alias from the indictment before presenting the indictment to the jury. Accordingly, all references to "Brian Weston" shall be redacted from the indictment for purposes of presenting the indictment to the jury.

Second, defendant also requests the deletion from the indictment of reference to Title 8 U.S.C. § 1326(b), and the factual allegations relating thereto, on the ground that the provisions of Section 1326(b) relate to sentencing, rather than to liability. The United States likewise does not oppose this motion, and agrees to the deletion from the indictment of any mention of defendant's prior conviction for aggravated felonies, as well as the deletion of all references to Section 1326(b) for the purpose of presenting the indictment to the jury. This is consistent with the Supreme Court's recent decision in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 1226, 140 L.Ed.2d 350 (1998), in which the Supreme Court resolved the split among the circuits by holding that Section 1326(b) is a sentencing enhancement provision rather than a separate crime, and need not be charged in the indictment or submitted to the jury.

D. *Motion to Preclude the Application of Enhanced Sentence Provisions of 8 U.S.C. § 1326(b)*

▮ Defendant asserts that he should not be subject to an enhanced sentence under 8 U.S.C. § 1326(b)(2) because the crimes for which he was previously convicted—bank larceny and conspiracy to commit bank larceny—were not classified as aggravated felonies at the time he was convicted. This is arguably a premature motion, since it goes to sentencing issues, rather than liability issues. Nonetheless, since the Indictment itself cites

this statute and since both parties have briefed the issue, the court will address the motion herein.

Defendant argues that because the crimes of bank larceny and conspiracy to commit bank larceny were not, at the time he was first removed from the United States, defined as "aggravated felonies," he cannot be subject to an enhanced sentence under 8 U.S.C. § 1326(b)(2). Section 1326(b)(2) provides for an enhanced sentence in the case of "any alien ... whose removal was subsequent to a conviction for commission of an aggravated felony."

The crimes previously committed by defendant (bank larceny and conspiracy to commit bank larceny) did not become defined as "aggravated felonies" until 1994, when the Immigration and Nationality Technical Corrections Act of 1994 (P.L. 103–416, § 222) added numerous crimes to the existing definition of "aggravated felony" found at 8 U.S.C. § 1101(a)(43). Among the crimes added as "aggravated felonies" in 1994 was the crime of a "theft offense (including receipt of stolen property) or burglary offense for which imprisonment of at least five years is imposed (regardless of any suspension)."[13] (Section 321(a)(3) of the 1996 Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) later amended this paragraph by replacing the words "at least five years" with "at least one year." Section 222(a), P.L. 103–416 (H.R.783) (October 25, 1994) (amending 8 U.S.C. § 1101(a)(43)).) The "effective date" provision of the 1994 Act (found at P.L. 103–416, § 222(b)) stated that "the amendments made by this section shall apply to convictions entered on or after the date of enactment of this Act." The date of enactment of the 1994 Act was October 25, 1994. Defendant argues that because his prior convictions were entered in 1987, long before the effective date of the 1994 Act, his

---

**13.** In a supplemental letter brief dated May 15, 1998, defendant argues that this provision does not properly refer to his crimes of bank larceny and conspiracy to commit bank larceny because this provision refers to "theft" rather than "fraud", and his crimes were more like fraud. This argument is unavailing. The term "theft" can be applied to crimes of fraud, as reflected in the common definition of the term "theft". *See*

Blacks Law Dictionary at 1477 (6th ed.1990) (defining "theft" as, *inter alia*, "[a] popular name for larceny ... [t]he fraudulent taking of personal property belonging to another, from his possession, or from the possession of some person holding the same for him, without his consent, with the intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking").

prior convictions may not be considered convictions for aggravated felonies.

In response, the United States points to the provision at the end of 8 U.S.C. § 1101(43), as amended in 1996, which states that

> the term [aggravated felony] applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years. *Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after September 30, 1996.*

8 U.S.C. § 1101(a)(43) [end of paragraph] (emphasis added). Thus, according to the United States, under the explicit terms of the Act, defendant's previous conduct is now defined as an aggravated felony even though that definition was not in effect at the time of his initial exclusion from the United States.

The United States is correct that the terms of the Act as amended in 1996 explicitly provide that the criminal acts for which defendant was previously convicted shall be defined as "aggravated felonies" regardless of the fact that this definition became law after the entry of those convictions. Accordingly, defendant comes within the express purview of the sentencing enhancement provision of 8 U.S.C. § 1326(b)(2), as he is an alien "whose removal was subsequent to a conviction for commission of an aggravated felony." Defendant's motion to preclude the application of Section 1326(b)(2) at sentencing shall therefore be denied.

E. *Motion to Preclude Sentence of Greater than Two Years*

■ Defendant next argues that under the Due Process clause of the United States Constitution, the maximum punishment to which defendant may be subjected is a sentence of not more than two years and/or a fine of not more than $1,000. Defendant argues that the United States should be estopped from seeking a punishment any greater than this, because the INS gave defendant written notice in 1992 that any attempt to reenter the United States without permission within five years would be a felony punishable by "imprisonment of not more than two years or and/or a fine of not more than $1,000.00." (Def.'s Br. at 16, and Attachment H thereto.) Defendant concedes that this due process/estoppel argument has been rejected by the Third Circuit. *See United States v. McCalla*, 38 F.3d 675, 679 (3d Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1968, 131 L.Ed.2d 857 (1995).[14] The motion must therefore be denied without further discussion.

## III. CONCLUSION

For the foregoing reasons, defendant's pretrial motions shall be denied in part and granted in part as follows: the court shall deny defendant's motion to permit evidence of a good faith lack of specific intent to violate Section 1326; the court shall reserve decision on defendant's motion to permit a justification defense, and shall hold a pretrial evidentiary hearing to determine the admissibility of defendant's justification evidence under Federal Rule of Evidence 104(a); the court will grant defendant's motion to redact from the indictment all references to the alias Brian Weston, and all references to the sentencing enhancement provision in 8 U.S.C. § 1326(b) and the facts relating thereto, to the extent that these redactions shall be made to the copy of the indictment that is presented to the jury; the court will deny defendant's motion to preclude, in the event of conviction, the application of the sentencing enhancement provisions of 8 U.S.C. § 1326(b)(2); and finally, the court will deny defendant's motion to estop the government from seeking a sentence of greater than two years. An appropriate Order shall be entered.

## ORDER

This matter having come before the court upon defendant's pretrial motions; and the

---

14. By raising this argument, defendant seeks merely to preserve the right to raise the issue in the future.

court having considered the parties' briefing including supplemental submissions; and the court having heard oral argument on these motions; and for the reasons stated in the Opinion of today's date;

IT IS, this 26th day of August, 1998, hereby ORDERED that defendant's motion to permit evidence of a good faith lack of specific intent to violate Section 1326 is DENIED; and

IT IS FURTHER ORDERED that the court shall reserve decision on defendant's motion to permit a justification defense; and

IT IS FURTHER ORDERED that the court shall hold a status conference with counsel on *September 1, 1998 at 2:00 P.M.* and set the schedule for a pretrial evidentiary hearing to determine the admissibility of defendant's justification evidence under Federal Rule of Evidence 104(a), including defendant's proposed expert witness testimony and to set the trial date; and

IT IS FURTHER ORDERED that defendant's motion to redact the indictment is GRANTED to the extent that prior to the presentation of the indictment to the jury, all references to the alias Brian Weston shall be deleted from the indictment, as well as all references to the sentencing enhancement provision in 8 U.S.C. § 1326(b) and the facts relating thereto shall likewise be deleted; and

IT IS FURTHER ORDERED that defendant's motion to preclude the application of the sentencing enhancement provisions of 8 U.S.C. § 1326(b) is DENIED; and

IT IS FURTHER ORDERED that defendant's motion to estop the government from seeking a sentence of greater than two years is DENIED.