**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose VILLAFANA–VIVERO,**
**Defendant–Appellant.**

**No. 02–1145.**

United States Court of Appeals,
Sixth Circuit.

Nov. 20, 2003.

Donald Daniels, Asst. U.S. Attorney, B. Rene Shekmer, U.S. Attorney's Office for the Western District of Michigan, Grand Rapids, MI, for Plaintiff–Appellee.

Brenda Popplewell, Brenda Popplewell, Attorney at Law, Somerset, KY, for Defendant–Appellant.

BEFORE: NORRIS, BATCHELDER, and ROGERS, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Defendant Jose Villafana–Vivero, a Mexican national, pleaded guilty to two counts of a three-count indictment. The first count charged him with entering the United States without obtaining the consent of the Attorney General after having been deported in the wake of an aggravated felony conviction. 8 U.S.C. § 1326(a). The second count charged him with intentionally using a social security number that he knew not to be his own "with intent to deceive." 42 U.S.C. § 408(a)(7)(B).

On appeal, defendant alleges that the district court failed to comport with Fed. R.Crim.P. 11 when it accepted his guilty plea. He maintains that he did not fully understand the charges against him when he entered his plea. Specifically, he thought that the social security number that he used was legitimate and that his return to the United States was authorized because he possessed a legitimate "green card."

Our own review of the hearing transcript leads us to a contrary conclusion. The colloquy between the district court and defendant indicates that the judge did his utmost to make certain that defendant

knew the consequences of his plea and that there was an adequate factual basis to support the charges to which he pleaded guilty. According, we affirm the judgment of the district court.

## I.

Defendant first entered the United States in 1970. He spent eight years working as a farm laborer in the fields of Texas before moving to New Jersey where he harvested peaches. While in New Jersey, his employer provided him with a social security card. Defendant recalled signing for the card. Although the social security number was valid, it belonged to another person, a man named Jesus Lopez. Over the years, defendant used this card and his New Jersey employer withheld social security taxes under its number.

After leaving New Jersey in the late 1980s, defendant continued to work as a migrant laborer, living in both Texas and Michigan. In 1989, he was seriously injured in a farm accident that caused him to have two discs removed from his spine and prevented him from working. In 1990, defendant married Anita Villafana, who is an American citizen.

Defendant's current problems can be traced to 1993 when he received his first, and only, criminal convictions: for a felony firearms violation and for assault with intent to do great bodily harm less than murder. The pre-sentence report summarized the events that gave rise to the convictions:

> The report from the Oceana County [Michigan] Sheriff's Department reflects the incident occurred at the Fraternal Order of Police parking lot in Shelby Township. Deputies responded to a 911 call that shots had been fired at this location. Deputies determined a large fight had broken out between the defen-

dant and the Vasquez family. The family was beating up the defendant when he pulled out a small caliber handgun and shot the victim. Mr. Villafana–Vivero denies this allegation.

> At the sheriff's department, deputies found a live .22 caliber bullet in Mr. Villafana–Vivero's clothing. The FBI compared this bullet and the one recovered from the victim's leg, and they were found to be in close compositional association. On December 17, 1996, the defendant was released by the Michigan Department of Corrections and transferred to INS custody for immediate deportation to Mexico.

The parties stipulated that, at the time of his deportation, defendant signed a "Notice" form advising him in English and Spanish that he was subject to criminal penalties if he returned to the United States within 20 years without obtaining the permission of the Attorney General. He never obtained that permission but instead re-entered the United States several months after deportation using a "green card" provided to him by his wife. It is stipulated that this card was properly issued on July 13, 1993, and was held by his wife because defendant was incarcerated when it arrived. She traveled to Mexico after his deportation and delivered it to him. They then returned to the United States together.

The second count of conviction involves the misuse of a social security number, which the pre-sentence report summarizes in this fashion:

> Records of the Shelby State Bank, Hart, Michigan, reflected on July 15, 1997, the defendant completed a Request for Taxpayer Identification Number and Certification form (W–9) under his false SSN [which he obtained years before in New Jersey]. The government contends this

was done to conceal his illegal presence in the United States and/or assets. Although he had been assigned a SSN of his own on July 2, 1993, he continued to utilize the phony one at least as recently as October 23, 2000, when he used it on a Currency Transaction Report, at Shelby State Bank. He also used it on his signature card. Mr. Villafana–Vivero did not use his issued SSN because he knew it was not useable [sic] under his imposed INS restrictions.

During Mr. Villafana–Vivero's presentence interview, the defendant stipulated to the offense conduct as it relates to his deportation from the United States and his false use of a SSN for bank transactions.

Despite these stipulations and his in-court admission of guilt, appellate counsel argues that defendant did not understand the charges against him and asks this court to vacate his conviction.

## II.

### Standard of Review

In *United States v. Vonn*, 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002), the Supreme Court explained the operation of Rule 11 in these terms:

> Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant. The Rule has evolved over the course of 30 years from general scheme to detailed plan, which now includes a provision for dealing with a slip-up by the judge in applying the Rule itself. Subsection (h) reads that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." The language comes close to tracking

the text of Rule 52(a), providing generally for "harmless-error" review, that is, consideration of error raised by a defendant's timely objection, but subject to an opportunity on the Government's part to carry the burden of showing that any error was harmless, as having no effect on the defendant's substantial rights. *See* Fed. Rule Crim. Proc. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"); *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Rule 52(a), however, has a companion in Rule 52(b), a "plain-error" rule covering issues not raised before the district court in a timely way: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." When an appellate court considers error that qualifies as plain, the tables are turned on demonstrating the substantiality of any effect on a defendant's rights: the defendant who sat silent at trial has the burden to show that his "substantial rights" were affected. *Id.*, 507 U.S., at 734–735, 113 S.Ct. 1770, 123 L.Ed.2d 508. And because relief on plain-error review is in the discretion of the reviewing court, a defendant has the further burden to persuade the court that the error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' " *Id.*, at 736, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).

The question here is whether Congress's importation of the harmless-error standard into Rule 11(h) without its companion plain-error rule was meant to eliminate a silent defendant's burdens under the Rule 52(b) plain-error review,

and instead give him a right to subject the Government to the burden of demonstrating harmlessness. If the answer is yes, a defendant loses nothing by failing to object to obvious Rule 11 error when it occurs. We think the answer is no.

*Vonn,* 535 U.S. at 62, 122 S.Ct. at 1048. Because defendant in this case failed to lodge an objection to the manner in which the district court received his guilty plea, our review is for plain error.

*Change of Plea Hearing*

During the change of plea hearing, the district court first established that defendant could not speak English, nor read Spanish.[1] Having ascertained that defendant's mind was "clear as you stand here today," the court asked if defendant needed more time to discuss a possible guilty plea with his lawyer:

> Defendant: No. Whatever he [my lawyer] says is fine.
>
> Court: No. This has to be your decision, sir. Do you need more time to discuss whether or not to plead guilty?
>
> Defendant: No. Not any more.

The assistant United States attorney then read from the indictment and the court advised defendant of his rights:

> Court: You have a right to plead not guilty to the charge. And if you plead not guilty or persist in your plea of not guilty, you have a right under the Constitution and laws of the United States to a speedy and public trial before a jury with the assistance of your attorney at every stage of those proceedings.
>
> You should not plead guilty because a lawyer is expensive; because, if you cannot afford a lawyer, one will be appointed to you.

Do you understand all of that, sir?

Defendant: Yes.

The district court went on to explain the presumption of innocence, the right to call witnesses, and the right to present evidence. Again, defendant indicated that he understood those rights. The court further discussed the right not to testify and the consequences of a plea: "There can be no appeal on the question of whether you did or did not commit the crime. The only thing you could appeal would be if you thought I did not properly follow the law in sentencing you."

At this point, the court questioned defendant about the crimes in order to satisfy itself of defendant's guilt. Before beginning, however, the court informed defendant of the sentencing range for each crime, including the likelihood of deportation and the lack of parole in the federal system. The judge also explained, "In the vast majority of cases that come before me, I must sentence within the guideline range." Having done all of this, the district court turned to defense counsel:

> Court: Mr. Ferrer, anything you want me to discuss with Mr. Villafana–Vivero in further detail, sir?
>
> Counsel: Nothing further, Your Honor.
>
> Court: Do you know of any reason why he should not enter a plea of guilty to the charge?
>
> Counsel: No, Your Honor.
>
> Court: Are you sure, sir, that he understands exactly—it seems to me like he does. But you've talked to him more than I have. Have you had enough time to discuss with him and are you satisfied, sir, that he fully understands the charges and the possible penalties in this case?
>
> Counsel: Yes, sir.

---

1. An interpreter assisted during the hearing.

Before accepting the plea, the district court ascertained that defendant used two social security numbers—one legitimately obtained in the early 1990s and the other dating back to his stay in New Jersey. Defendant conceded that he used the latter in the Shelby State Bank. With respect to the charge of illegal re-entry, the government introduced evidence establishing that defendant was a foreign national who had been deported after a felony conviction. It also indicated, "We have a certificate of nonexistence of record from the Office of the Attorney General" respecting permission to re-enter the country.

The district court concluded the hearing by asking counsel, "Have I complied with all the requirements of Rule 11?" Defense and government counsel both replied in the affirmative.

Defendant now argues that the district court failed to establish a factual basis for the plea: "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R.Crim.P. 11(b)(3). Defendant maintains that he did not intend to re-enter the United States illegally. Turning to the conviction for misuse of a social security number, defendant contends that his responses during the change of plea hearing demonstrate a similar lack of intent to deceive.

■ We turn first to defendant's contention that his lack of intent to break the law should constitute a defense to his conviction for illegal re-entry into the United States. The government must prove three elements of an offense under § 1326(a): (1) the defendant is an alien; (2) the defendant has been arrested and deported from the United States; and (3) thereafter, the defendant was found in the United States without the Attorney General's express consent to reapply for admission. *See United States v. Henry,* 111 F.3d 111, 113

(11th Cir.1997). Defendant does not seriously dispute that all three of these elements are present in his case; he merely argues that the government must prove that he had the specific intent to re-enter this country unlawfully. Every court of appeals that has considered this issue, including the Sixth Circuit, has held that § 1326 contains no requirement of specific intent to enter the United States unlawfully. *See, e.g., U.S. v. Carlos–Colmenares,* 253 F.3d 276, 278 (7th Cir.2001); *United States v. Gutierrez–Gonzalez,* 184 F.3d 1160, 1165 (10th Cir.1999); *United States v. Martus,* 138 F.3d 95, 97 (2d Cir.1998); *United States v. Gonzalez–Chavez,* 122 F.3d 15, 17–18 (8th Cir.1997); *Henry,* 111 F.3d at 114; *United States v. Trevino–Martinez,* 86 F.3d 65, 69 (5th Cir.1996); *United States v. Ortiz–Villegas,* 49 F.3d 1435, 1436–37 (9th Cir.1995); *United States v. Hussein,* 675 F.2d 114, 115–16 (6th Cir.1982).

■ With respect to the social security card conviction, defendant acknowledged that he used the older number after having obtained a new, valid number. Moreover, he used the false number in conjunction with banking transactions. The charged offense, 42 U.S.C. § 408(a)(7), requires three elements: use of a social security number; the intent to deceive; and a false representation. *United States v. Means,* 133 F.3d 444, 447 (6th Cir.1998). The district court established an adequate factual basis to support a knowing guilty plea with respect to this charge.

In our view, the considerations outlined above are sufficient to sustain both convictions, particularly given that our review is for plain error, which requires that defendant raise more than a possibility that an error occurred below. Rather, he must show that his "substantial rights" were affected and that the error seriously af-

fected the fairness, integrity, or public reputation of the proceedings. *Vonn,* 122 S.Ct. at 1048 (citing *United States v. Olano,* 507 U.S. 725, 734–35, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). The district court was keenly aware of its responsibility under Rule 11 and questioned defendant accordingly. We detect no error, let alone plain error.

### III.

The judgment is **affirmed.**